874 A.2d 520

RAYMOND PINTO, JR., PLAINTIFF–APPELLANT, v. NEW JERSEY MANUFACTURERS INSURANCE COMPANY, DEFENDANT–RESPONDENT, AND R.W. VOGEL, INC., DEFENDANT.

Argued October 27, 2004—Decided June 6, 2005.

John M. Vlasac, argued the cause for appellant Raymond Pinto, Jr., (*Gill & Chamas,* attorneys).

Glenn T. Dyer, argued the cause for respondent New Jersey Manufacturers Insurance Company (*Connell Foley,* attorneys; *Brian G. Steller,* of counsel).

Gerald H. Baker, argued the cause for *amicus curiae* Association of Trial Lawyers of America–New Jersey (*Baker, Garber, Duffy & Pedersen,* attorneys).

Daniel J. Pomeroy, argued the cause for *amicus curiae* New Jersey Defense Association in *Pinto v. New Jersey Manufacturers*

*Insurance Company* (*Mortenson and Pomeroy*, attorneys; *Mr. Pomeroy* and *Karen E. Heller*, on the brief).

Justice LaVECCHIA delivered the opinion of the Court.

This insurance appeal involves the application of an underinsured motorist (UIM) step-down clause in an employer's business automobile policy to a case in which an employee has been injured in a covered vehicle in a work-related accident. The step-down provision capped the employer's UIM exposure at the limit provided by the employee's own automobile insurance policy or that of a resident family member, except that the step-down would be inapplicable if the employee qualified as a "named insured" under the employer's policy. Because the Court's earlier opinions have expressed its clear willingness to enforce unambiguous step-down provisions as a matter of contract between insurers and insureds, *see,Magnifico v. Rutgers Cas. Ins. Co.*, 153 *N.J.* 406, 710 *A.*2d 412 (1998), the issue here is one of insurance contract interpretation. Specifically, the question is whether the denomination of a corporate entity as the "named insured" in the employer's policy is so ambiguous as to allow any employee to be characterized as a "named insured" and thus avoid the step-down. The Appellate Division answered that question in the negative. *Pinto v. New Jersey Mfrs. Ins. Co.*, 365 *N.J.Super.* 378, 381, 839 *A.*2d 134 (2004). We now affirm the thorough and thoughtful opinion by Judge Fall.

## I.

On December 22, 1997, plaintiff Raymond Pinto sustained severe personal injuries when the truck he was driving was struck from behind by a vehicle driven by Theresa Trotter. At the time of the accident, Pinto was an employee of R.W. Vogel, Inc. (Vogel), a company owned and controlled by Roger and Anita Vogel, and was driving a truck owned by Holgate Property Associates (Holgate), another company also owned by Roger and Anita. The truck operated by Pinto on the date of the accident was the same

truck regularly assigned to him for his work with Vogel. On that day, however, he was assigned to work on a street cleaning job for Environmentally Clean Naturally, Inc. (ECN), a corporation owned by the Vogels' son, Jeffrey. Both Roger and Jeffrey had given Pinto permission to use the truck to perform the street cleaning operation that day.

The truck was insured by Vogel through a business insurance automobile policy issued by New Jersey Manufacturers Insurance Company (NJM). The policy named the two corporate entities of Vogel and Holgate as the "named insureds." No natural person was so listed; however, Roger and Anita were identified as individuals insured for "Drive Other Car" coverage and "Broadened Personal Injury Protection" coverage provided through endorsements.

The policy also included an endorsement providing uninsured motorist (UM)/ underinsured motorist (UIM) coverage with a limit of one million dollars per accident. The UM/UIM endorsement stated that it provided coverage for "all sums the insured is legally entitled to recover as compensatory damages from the owner or driver of an uninsured motor vehicle or an underinsured motor vehicle." The endorsement contained two step-down provisions that lessened the limit of UM/UIM coverage available in certain circumstances for persons who were not "named insureds" under the NJM policy. The first provision applied if:

(1) An insured is not the individual named insured under this policy;

(2) That insured is an individual named insured under one or more other policies providing similar coverage; and

(3) All such other policies have a limit of insurance for similar coverage which is less than the Limit of Insurance for this coverage.

In that case, "the most" the NJM policy "will pay for all damages resulting from any one accident with an uninsured motor vehicle or an underinsured motor vehicle shall not exceed the highest applicable limit of insurance under any coverage form or policy providing coverage to that insured as an individual named insured."

The second step-down provision applied when an insured, not a "named insured," had UIM coverage through a family member's policy. In such circumstances, when

(1) An insured is not the individual named insured under this policy or any other policy;

(2) That insured is insured as a family member under one or more other policies providing similar coverage; and

(3) All such other policies have a limit of insurance for similar coverage which is less than the Limit of Insurance for this coverage then the most [the NJM policy] will pay for all damages resulting from any one accident with an uninsured motor vehicle or an underinsured motor vehicle shall not exceed the highest applicable limit of insurance under any coverage form or policy providing coverage to that insured as a family member.

As noted, the NJM policy listed only the two corporate entities of Vogel and Holgate as the "named insureds." No individuals were identified as such. In respect of UM/UIM coverage, the policy contained the following definition of an "insured."

1. You.

2. If you are an individual, any family member.

3. Anyone else occupying a covered auto or temporary substitute for a covered auto....

4. Anyone for damages [that] he or she is entitled to recover because of bodily injury sustained by another insured.

Pinto was a named insured under a personal automobile insurance policy issued by Liberty Mutual that included UM/UIM coverage of up to $100,000 per person for bodily injuries. For his injuries caused by the automobile accident involving Trotter, Pinto received $30,000 of the available $300,000 from Trotter's liability insurance coverage.[1] Pinto's damages exceeded that amount, however, so he submitted a claim for the one million dollar maximum of UIM coverage under the NJM policy. NJM denied the claim based on operation of the step-down provision. Pinto then filed this declaratory judgment action seeking to compel

---

[1] The $300,000 payout from Trotter's liability insurance coverage was divided, pursuant to an agreement by all parties, between Pinto and Trotter's infant daughter, who also suffered serious injuries in the accident.

NJM to provide the maximum one million dollar limit of UIM coverage.

NJM moved for summary judgment asserting that because Pinto was not a named insured under the policy, the step-down provision limited him to the amount of UM/UIM coverage available pursuant to his own policy of insurance and that limit was satisfied upon Pinto's receipt of the $30,000 from Trotter's insurer. Pinto claimed that the policy was ambiguous as to the "named insured" under the NJM policy and that he should not be held to the step-down limit. The trial court agreed with Pinto and denied NJM's motion for summary judgment, holding that when a business automobile insurance policy fails to designate a business entity's human agent as the "named insured" entitled to UIM benefits, any individual employed by the corporation is covered under the maximum UIM coverage provided by the policy. NJM appealed and the Appellate Division reversed, holding that Pinto was a named insured under his own automobile insurance policy and that he was not a named insured under the NJM business auto insurance policy; therefore, his claim was limited by operation of the step-down provision to the amount of UIM coverage he elected in his personal automobile insurance policy. *Pinto, supra,* 365 *N.J.Super.* at 381–82, 839 *A.*2d 134. Accordingly, the court held that Pinto was not entitled to UIM coverage from NJM because his limit of coverage had been satisfied by the payment from Trotter's insurer. *Ibid.*

In tracing the relevant case law, Judge Fall noted that UIM coverage " 'is 'personal' to the insured,' " and that "UIM '[c]overage is linked to the injured person, not the covered vehicle.' " *Id.* at 388, 839 *A.*2d 134 (quoting *Aubrey v. Harleysville Ins. Cos.,* 140 *N.J.* 397, 403, 658 *A.*2d 1246 (1995)). Later decisions "rejected the proposition that *Aubrey* limited a claimant's eligibility for and entitlement to UIM coverage only to that provided in his or her personal auto policy in circumstances when the claimant also was entitled to UIM coverage under another applicable policy." *Id.* at 390, 839 *A.*2d 134. *See French v. New Jersey School Bd. Ass'n*

*Ins. Group*, 149 *N.J.* 478, 694 *A.*2d 1008 (1997). That said, Judge Fall observed that this Court in dicta had given "tacit approval" to the use of "step-down coverage limitation clauses" similar to the provision at issue in this case. *Pinto, supra*, 365 *N.J.Super.* at 395–97, 839 *A.*2d 134 (citing *Magnifico, supra*, 153 *N.J.* at 418, 710 *A.*2d 412).

Applying the step-down provision in this matter, the panel determined that Pinto's UIM recovery was limited to $100,000, "the UIM limit contained in his personal auto policy." *Id.* at 397, 839 *A.*2d 134. The court noted NJM's use of the standard policy definition of an "underinsured motor vehicle" that had been approved in *New Jersey Manufacturers Insurance Co. v. Breen*, 153 *N.J.* 424, 710 *A.*2d 421 (1998), and stated:

[T]he Court's putative approval in *Breen* of that portion of the standard-policy definition of an "underinsured motor vehicle"—the same definition contained in NJM's policy here—supports our conclusion that plaintiff was not "underinsured." That definition would render plaintiff here underinsured only if the tortfeasor's liability limit was less than the highest applicable limit of UIM coverage under any policy naming plaintiff as an individual named insured. Inasmuch as Trotter's $300,000 liability limit exceeded the $100,000 UIM per person limit under the only policy that identified plaintiff as a named insured—his own—he was not "underinsured." Therefore, plaintiff had no valid claim to the $1 million in UIM coverage under NJM's policy.

[*Pinto, supra*, 365 *N.J.Super.* at 398–99, 839 *A.*2d 134.]

The court further noted that no natural person was listed as a "named insured," nor was Pinto listed as a covered driver on NJM's policy. *Id.* at 406, 839 *A.*2d 134. Thus, the court held that plaintiff could not have had a reasonable expectation of coverage. *Ibid.* In the Court's view, "[i]n the absence of any individual's name on the declarations page of NJM's policy, the 'boilerplate' language in the UIM provision did not render the policy ambiguous." *Ibid.* Applying the policy's step-down clause, the court held that plaintiff could only obtain $100,000 in UIM benefits under the limit contained in his own policy and, "[a]s a result, plaintiff was not an underinsured motorist because his personal auto policy's UIM coverage did not exceed the tortfeasor's $300,000 liability limit." *Id.* at 411, 839 *A.*2d 134.

We granted Pinto's petition for certification, 180 *N.J.* 151, 849 *A.*2d 184 (2004).

## II.

■ Like the Appellate Division, we find the language of the step-down clause enforceable. Our case law recognizes the legitimacy of step-down provisions even though they may result in differential treatment of similar plaintiffs based on the existence of other available insurance. *See Magnifico v. Rutgers Cas. Ins. Co.,* 153 *N.J.* 406, 418, 710 *A.*2d 412 (1998).

■ In a number of cases we have addressed questions concerning the amount of UIM coverage "held" by an individual for purposes of assessing the maximum available to an injured person. Starting with *Aubrey v. Harleysville Insurance Cos.,* 140 *N.J.* 397, 658 *A.*2d 1246 (1995), and later as clarified in *French v. New Jersey School Board Ass'n Insurance Group,* 149 *N.J.* 478, 694 *A.*2d 1008 (1997), our case law has established that "when an automobile accident occurs in the course of employment, a policy 'held' by a regular employee of a business enterprise includes the policy of the enterprise that covers the employee in the course of employment." *Id.* at 481, 694 *A.*2d 1008. The UIM statute, *N.J.S.A.* 17:28–1.1e, applies to all UIM insurance coverage "held" by the individual. *French, supra,* 149 *N.J.* at 487, 694 *A.*2d 1008. Thus, an insurance policy "held" by an individual may include the UIM insurance coverage purchased by that person's employer to cover its employees. *Id.* at 493, 694 *A.*2d 1008. In *French,* we concluded that the plain language of the employer's insurance policy manifested an intent to provide UIM coverage for its school bus drivers injured during the course of their employment. *Id.* at 494, 694 *A.*2d 1008. Plaintiff Diana French therefore "held" UIM coverage under the school district's policy and was entitled to recover. *Ibid.*

In *Magnifico, supra,* we allowed a passenger injured in a car accident to recover under the UIM clause of the insurance policy of the owner of the car in which she was injured. 153 *N.J.* at 416,

710 *A.2d* 412. In holding that Magnifico could state a claim for UIM coverage under the insurance policy of the owner, we relied on the policy language that extended UIM coverage to permissive occupants of the vehicle. *Ibid.* Significantly, we also upheld the "other insurance" clause in Magnifico's policy that limited the amount of UIM coverage that she could claim under her own insurance policy to the amount in excess of the UIM coverage that she could recover under the vehicle owner's policy. *Ibid.* We clearly stated that insurers are free to modify insurance policy language to limit the UIM coverage of passengers and others who are named insureds under other insurance policies. *Id.* at 418, 710 *A.2d* 412. Referring to the standard form of the 1996 insurance agreement on file with the Department of Insurance, we observed that a step-down clause in an insurance policy can restrict the amount of UIM coverage available to an individual who is not named in that policy to the limit of UIM coverage that the individual may recover under his or her own insurance policy. *Ibid.*

In the companion case of *New Jersey Manufacturers Insurance Co. v. Breen,* 153 *N.J.* 424, 710 *A.2d* 421 (1998), we dealt with a related question arising in the mix of personal and business automobile insurance policies. The question was whether a family member of a named insured under a business automobile insurance policy could receive the benefit of UIM coverage under that policy. *Id.* at 425, 710 *A.2d* 421.

Ruth Breen was injured in an automobile accident caused by Loni Shulman. *Ibid.* Shulman's automobile insurance policy provided liability coverage of $100,000. *Id.* at 426, 710 *A.2d* 421. Breen, who was driving her own car, carried $50,000 of UIM insurance coverage. *Ibid.* Therefore, Shulman was not underinsured with respect to Breen's insurance policy. *Ibid.* However, Breen's parents owned a family business that carried business auto insurance. *Ibid.* Under the business auto insurance policy, employees of the business and family members of the named insureds were entitled to $500,000 in UIM coverage. *Ibid.* The

named insureds under the business auto insurance policy included Breen's parents and stated that family members of named insureds would be entitled to UIM coverage as "insureds." *Ibid.* Accordingly, Breen sought to recover the $500,000 of UIM coverage under the business auto insurance policy. *Ibid.*

In holding that Breen could recover under her parents' business auto insurance policy, we reiterated the reasoning of *French* and *Magnifico* that the plain language of an insurance policy dictates whether a person is entitled to recover UIM benefits. *Breen, supra,* 153 *N.J.* at 431, 710 *A.*2d 421. Writing for the Court, Justice Stein reasoned that because the business auto policy expressly included any family member of a named insured, Breen could state a claim to the $500,000 of available UIM coverage. *Ibid.* Thus, Breen "held" the business's insurance policy's UIM coverage within the meaning of *N.J.S.A.* 17:28–1.1e. *Breen, supra,* 153 *N.J.* at 431, 710 *A.*2d 421. However, Justice Stein once again stated, as he had in *Magnifico,* that insurers were free to modify the language of insurance policies to incorporate step-down clauses limiting the amount of UIM coverage available to individuals such as Breen. *Breen, supra,* 153 *N.J.* at 432, 710 *A.*2d 421.

That case law is the backdrop of our inquiry.

### III.

Pinto contends that "non-fortuitous primary operators of a corporation's covered vehicles are implied ... insureds in a commercial auto insurance policy that technically names only the corporate entity as being the named insured." In support, he cites *Cook–Sauvageau v. PMA Group,* 295 *N.J.Super.* 620, 685 *A.*2d 978 (App.Div.1996), and points specifically to the court's statement that "[a]lthough [the plaintiff] was not specifically named in [the] business automobile policy, it [was] ... clear ... that the essential risk for which [the defendant's] business automobile policy was intended to provide coverage was an accident involving an employee's operation of one of the employer's vehicles." *Id.* at 627, 685 *A.*2d 978. According to Pinto, the *Cook–*

*Sauvageau* court reasoned that to hold otherwise would mean that the premium for UIM coverage did not provide "any meaningful benefit either to the employer or to its employees." *Id.* at 627–28, 685 *A*.2d 978.

In our view, Pinto has overread the decision in *Cook–Sauvageau*. That case did not involve application of a step-down provision. In *Cook–Sauvageau*, although the employer's policy provided UIM coverage to anyone "occupying" a covered vehicle, the insurer declined coverage contending that that provision did not apply because the employee was limited to obtaining UIM coverage under his personal automobile policy, citing *Aubrey*. *Cook–Sauvageau, supra,* 295 *N.J.Super.* at 623, 685 *A*.2d 978. In rejecting that claim based on the unambiguous language of the employer's policy, the court in *Cook–Sauvageau* commented that although the corporate employer was the only "named insured" under the policy "the essential risk for which [the defendant's] business automobile policy was intended to provide coverage was an accident involving an employee's operation of one of the employer's vehicles." *Id.* at 627, 685 *A*.2d 978. *See also French, supra,* 149 *N.J.* at 488–89, 694 *A*.2d 1008 (citing *Cook–Sauvageau* favorably; noting, however, that disputes may arise as to whether "employer's policy or the personal policy [of employee] would be primary"). In *Cook–Sauvageau,* the court elaborated on its reasons for finding coverage for the employee's operation of one of the employer's vehicles:

This conclusion is reinforced by the fact that if the UIM endorsement of the standard business automobile policy were construed to provide coverage only to the employer, the premium paid for UIM coverage would not provide any meaningful benefit either to the employer or to its employees. When as in this case a business automobile policy is issued to a corporate employer, the actual purchaser of the policy cannot itself suffer bodily injury and thus could not maintain a claim for UIM benefits except perhaps in the rather unusual situation where its collision coverage was insufficient to cover the full damages to its vehicle. On the other hand, if the UIM endorsement is construed to extend coverage to the business' employees, it provides a financial benefit not only to the employees but also to the employer. An employer which pays workers compensation benefits is subrogated to any claim its employees may have against a third party, *N.J.S.A.* 34:15–40, which includes a claim for UIM benefits. *Stabile v. New Jersey Mfrs. Ins. Co.,* 263 *N.J.Super.* 434, 439–42, 623 *A*.2d 252 (App.Div.1993). Consequently, a self-insured

employer may derive a direct financial benefit from its employee's receipt of UIM benefits and an employer covered by workers compensation insurance presumably could derive a comparable benefit in the form of lower premiums for such coverage. [*Cook–Sauvageau, supra,* 295 *N.J.Super.* at 627–28, 685 *A.*2d 978 (footnote omitted).]

Pinto's invocation of that language is unavailing in the circumstances of this case. Here, coverage is not disputed. Only the discrete application of a step-down provision is at issue. The policy concededly covers any employee "occupying" a covered vehicle and establishes a one million dollar limit to such an employee provided he or she is neither a "named insured" nor insured as a "family member" on another policy. Even in those cases, coverage is not eliminated but simply stepped down to the cap in the relevant policies. As the Appellate Division noted, there is nothing unclear, ambiguous or unfair about those provisions. The panel cited *Botti v. CNA Insurance Co.,* 361 *N.J.Super.* 217, 824 *A.*2d 1120 (App.Div.2003), a case involving a step-down clause similar to the one in issue here, in support of its position:

The policy at issue ... stated that the "named insureds" were the employer and two corporate affiliates. Nothing suggested that anyone else was a named insured. We concluded that the fact that the named insureds were corporations did not render the policy language ambiguous. We rejected the plaintiffs claim that, because a corporation cannot sustain a personal injury, the UM coverage was illusory, stating in pertinent part:

First, we note that the UM endorsement provides coverage for bodily injury and/or property damage. Second, the UM endorsement does not limit coverage to the "named insureds." In addition to the "named insureds," coverage is afforded to "anyone occupying a covered 'auto,' or a temporary substitute for a covered 'auto.'" We further note that the [business auto] policy covered many 'autos,' the Jeep being number thirty-eight. Therefore, many individuals were potential UM claimants under the [business auto] policy. Each potential claimant could receive up to $1 million in UM coverage unless the claimant was a "named insured" in another policy providing lower UM coverage. In the latter case, the claimant would still receive a maximum UM coverage equal to that set by the claimant's policy. This hardly constitutes illusory coverage.

[*Pinto, supra,* 365 *N.J.Super.* at 401, 839 *A.*2d 134 (citations omitted).]

Judge Fall continued, noting that although *Botti* involved UM, not UIM, coverage, the issue in respect of the step-down clause was the same:

Like plaintiff here, the plaintiff in *Botti* was not a "named insured" on the policy. However, the plaintiff in *Botti*, like this plaintiff, was an "insured" because he was occupying a covered auto at the time of the accident.

Similarly, the business auto policy in *Botti* did not identify an individual as a named insured, just as NJM's policy in this case named only the business entities of Vogel and Holgate. Here, the NJM business auto policy—like the business auto policy in *Botti*—cannot be considered to have provided illusory UIM coverage because plaintiff, and anyone else who was involved in an automobile accident while occupying a Vogel or Holgate vehicle, was an "insured" and thereby entitled to UIM coverage if they were not a "named insured" on any other auto insurance policy.

[*Pinto, supra,* 365 *N.J.Super.* at 402, 839 *A.*2d 134].

See also, *id.* at 402–03, 839 *A.*2d 134 (finding in accord, *Christafano v. New Jersey Mfrs. Ins. Co.,* 361 *N.J.Super.* 228, 235, 824 *A.*2d 1126 (App.Div.2003) (enforcing unambiguous language of step-down clause limiting plaintiff to UM coverage as "named insured" provided pursuant to own personal policy of insurance)). To the extent that plaintiff relies also on *Macchi v. Connecticut General Insurance Co.,* 354 *N.J.Super.* 64, 804 *A.*2d 596 (App.Div.2002), and *Araya v. Farm Family Casualty Insurance Co.,* 353 *N.J.Super.* 203, 801 *A.*2d 1194 (App.Div.2002), we agree with Judge Fall's reasoning in distinguishing those matters on their facts. See *Pinto, supra,* 365 *N.J.Super.* at 403–10, 839 *A.*2d 134.

In sum, the NJM policy language is not ambiguous. It does not designate Pinto by name, or by implication, as a "named insured." An employer can cover employees as "named insureds" provided appropriate language is added stating such an intention. Finally, to avoid having an employer misapprehend whether there is a need to include specific language incorporating employees as "named insureds" on business automobile policies, we impose on insurers, their agents, and brokers, a duty to inform employers about the necessity for such language so that employers may make informed decisions about whether their employees will have the status of "named insureds" under the employers' business automobile insurance policies.

## IV.

The judgment of the Appellate Division is affirmed.

Justice ZAZZALI, concurring in part, and dissenting in part.

The essential question in this appeal is: what does it mean when a corporation, but no human employee, is listed on an insurance policy that provides coverage for personal injuries? The specific term at issue is a step-down in coverage provision for UM/UIM insurance for persons who are not "named insureds" in a policy that lists two corporate entities as the "named insureds."

Although I concur with the imposition of a prospective duty, I disagree with the majority opinion because a corporate purchaser of auto insurance could reasonably expect that the policy covers its employees, rather than the corporation itself, due to the difficulty, in many situations, of naming all of its individual employees. More likely, a corporate purchaser would use the name of the corporation as shorthand for the corporation *and* all of its employees acting within the scope of their employment. This is particularly so because the corporate entity—a legal fiction that has no physical human qualities—can never sustain the bodily injuries contemplated by a $1 million policy. In this appeal, the record does not support a finding that the employer did not intend its employees to reap the full benefit of the million-dollar policy. Who, one can fairly ask, did the employer intend to insure if not the driver of its vehicles?

I therefore respectfully dissent and would conclude that a corporate purchaser of auto insurance would reasonably expect the policy to cover fully the corporation's employees.

I

I concur with the majority's prospective imposition of a duty on insurers and their agents and brokers to advise employers of the need to provide specific language in the policy that reflects the employer's intent to include employees as named insureds. That sensible solution alleviates my concerns for the future. Although I cannot claim that the requirement is a concession by the majority, the imposition of a prospective obligation does suggest that something may be awry with the policy.

However, unlike the majority, I would apply the new duty in this matter and conclude that New Jersey Manufacturers Insurance Company (NJM) violated it. Denying Pinto relief disserves principles of fairness. In our debate over esoteric nuances of insurance law, we should not forget that there is a victim here—Pinto, a street cleaner who sustained severe and permanent personal injuries and has not received adequate compensation. Our prior decisional law in this area has confused parties and the public, and we therefore should give Pinto the benefit of the newly imposed duty. By pursuing this litigation to the highest level, Pinto has occasioned the Court's imposition of the new duty. It is unfair that all benefit by this appeal save Pinto.

## II

Apart from those considerations, I would provide relief to Pinto on the basis of the two-step analysis developed in our insurance case law. *See, e.g., Nav–Its, Inc. v. Selective Ins. Co. of Am.,* 183 *N.J.* 110, 118, 869 *A.*2d 929 (2005). After determining that the policy is ambiguous, I would construe the policy language in " 'accord with the objectively reasonable expectations of the insured.' " *Ibid.* (quoting *Doto v. Russo,* 140 *N.J.* 544, 556, 659 *A.*2d 1371 (1995)). More specifically, I believe that the failure to list natural persons in the policy creates an ambiguity and that the policyholder would reasonably expect that employees would be considered named insureds under the contract.

## A

In an insurance policy, an ambiguity exists when an "average policyholder cannot make out the boundaries of coverage." *Weedo v. Stone–E–Brick, Inc.,* 81 *N.J.* 233, 247, 405 *A.*2d 788 (1979). It is axiomatic that "any ambiguity in an insurance contract must be resolved against the insurer and in favor of coverage." *Botti v. CNA Ins. Co.,* 361 *N.J.Super.* 217, 224, 824 *A.*2d 1120 (App.Div. 2003).

In this matter, as noted, the policy lists only corporations as named insureds. Listing a corporate entity as the named insured on a policy creates an ambiguity because that language can be interpreted in two ways. One could read the reference to the corporation as the named insured in its most literal sense and conclude that the named insured is only the corporate entity and not its employees. Alternatively, one could reasonably interpret the same language as shorthand for all of the corporation's employees and determine that the employees are named insureds. Thus, on its face, the policy provision is susceptible to multiple meanings because the reference to the corporation as the named insured may encompass none or all of the corporation's human employees. Now that an accident implicating the step-down provision has occurred, NJM predictably advocates for the first interpretation which would favor the insurer. Although NJM's theory "is understandable, . . . it seems highly unlikely that the ordinary insured would have so understood it on his or her own reading." *Gerhardt v. Cont'l Ins. Cos.*, 48 *N.J.* 291, 299, 225 *A*.2d 328 (1966).

The majority opinion discusses *Cook–Sauvageau v. PMA Group*, 295 *N.J.Super.* 620, 685 *A*.2d 978 (App.Div.1996), in which the Appellate Division found that an employee was covered by the corporation's insurance policy. *Ante* at 414, 874 *A*.2d at 525. In *Cook–Sauvageau, supra,* the panel explained that "although [the plaintiff] was not specifically named in [the] business automobile policy, it [was] . . . clear . . . that the essential risk for which [the defendant's] business automobile policy was intended to provide coverage was an accident involving an employee's operation of one of the employer's vehicles." 295 *N.J.Super.* at 627, 685 *A*.2d 978. According to the majority, *Cook–Sauvageau* and similar cases are distinguishable because they focused on whether the policies provided any coverage at all for employees not individually named, but did not specifically involve step-down in coverage provisions. However, regardless of whether interpreting a step-down provision or the policy as a whole, the ambiguity exists because it arises

from naming the corporation without referencing any natural persons.

## B

Due to the ambiguity in the policy, we must effectuate coverage consonant with an insurance purchaser's reasonable expectations. *See Sparks v. St. Paul Ins. Co.*, 100 *N.J.* 325, 336, 495 *A.*2d 406 (1985). The record before us does not provide sufficient detail on this question. Our practice is to "place particular emphasis on the declarations page when determining the reasonable expectations of the insured." *President v. Jenkins*, 180 *N.J.* 550, 565, 853 *A.*2d 247 (2004) (citing *Zacarias v. Allstate Ins. Co.*, 168 *N.J.* 590, 602–03, 775 *A.*2d 1262 (2001)). In this appeal, the declarations page supplies no additional information; it simply reiterates that the corporation is the named insured.

However, it is not difficult to discern the employer's likely expectations when it purchased insurance for forty-eight vehicles at the substantial premium of $88,233. In addition to the price of that premium, we also know that, given the nature of its business, this purchaser's employees bore an increased risk of being involved in a vehicular accident while acting in the course of employment. As a matter of business judgment, an employer would be unlikely to spend substantial capital to receive almost no benefit in return.

If the employees are not named insureds, and the step-down provision applies to them, employees would be eligible for the $1 million benefit only in the rare circumstance in which they are uninsured. Because New Jersey requires drivers to maintain a minimal amount of car insurance, the likelihood that one of the purchaser's employees would be uninsured is so small as to render the coverage purchased by the employer virtually illusory. Thus, almost no one will benefit from the insurance contract—except the insurer. Such a result counters both business and common sense.

Instead, a corporation would reasonably expect that the policy that it purchased would provide an extra layer of insurance for its

employees, especially in situations like the present one where the nature of the job increases the likelihood of injury. Prior case law demonstrates that employers can intend individuals to be named insureds, even though they are not listed as such. *See, e.g., Macchi v. Conn. Gen. Ins. Co.*, 354, *N.J.Super.* 64, 74, 804 *A.*2d 596 (App.Div.2002) (stating that plaintiff was "for all intents and purposes an individual named insured under [the] policy" where corporation purchased policy and plaintiff was primary user of vehicle); *Araya v. Farm Family Cas. Ins. Co.*, 353 *N.J.Super.* 203, 210–11, 801 *A.*2d 1194 (App.Div.2002) (holding that "ambiguity arises from ... failure to designate a natural person ... entitled to UIM coverage" and relying on declarations page as indicator of purchaser's reasonable expectations). I recognize that those decisions do not apply with syllogistic precision to this matter, just as the attempt by defendants to shoehorn this appeal into other insurance case law is an imperfect fit. However, *Macchi* and *Araya* do support the reasonableness of an employer's expectation of coverage for its employees.

For the reasons discussed above, I believe that the policy is ambiguous and that the purchaser reasonably expected it to cover his employees. Therefore, I respectfully dissent.

Justice ALBIN joins in this opinion.

*For affirmance*—Chief Justice PORITZ, and Justices LaVECCHIA, WALLACE and RIVERA–SOTO—4.

*Concurring in part; dissenting in part*—Justices ZAZZALI and ALBIN—2.