NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2337-14T1

VANESSA RIVERA,

    Plaintiff-Appellant,

v.

ELMER F. McCRAY, III,

    Defendant,

and

NEW JERSEY RE-INSURANCE COMPANY,

    Defendant-Respondent.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **May 2, 2016** |
| **APPELLATE DIVISION** |

Argued April 6, 2016 — Decided May 2, 2016

Before Judges Ostrer, Haas[1] and Manahan.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-2796-13.

Melville D. Lide argued the cause for appellant (Radano & Lide, attorneys; Mr. Lide, on the brief).

Daniel J. Pomeroy argued the cause for respondent (Pomeroy, Heller & Ley, LLC, attorneys; Mr. Pomeroy and Karen E. Heller, on the brief).

_____

[1] Judge Haas did not participate in oral argument.  He joins the opinion with consent of counsel.  R. 2:13-2(b).

The opinion of the court was delivered by

OSTRER, J.A.D.

This appeal requires us to interpret an underinsured motorist (UIM) coverage step-down provision in a personal automobile insurance policy, issued by defendant New Jersey Re-Insurance Company (NJM)[2]. The issue presented is whether a "special policy," see N.J.S.A. 39:6A-3.3, which provides no UIM coverage at all, provides "similar coverage" so as to trigger the step-down provision and reduce UIM coverage to zero. Based on the plain language of the NJM policy and well-established principles of insurance contract interpretation, we conclude it does not. We therefore reverse the trial court's order dismissing plaintiff's claim to UIM coverage under the NJM policy.

I.

The underlying facts are undisputed. On July 5, 2011, defendant Elmer F. McCray rear-ended plaintiff Vanessa Rivera while she operated a vehicle owned by her mother, Janet Torres-White, who was insured by NJM. Rivera was separately insured under a special policy issued by National Continental Insurance Company.

---

[2] The policy form is used by the New Jersey Manufacturers Insurance Group, of which NJ Re-Insurance Co. is a part.

Rivera alleged she sustained significant and permanent personal injuries. Rivera settled her negligence claim against McCray for his policy's liability limit of $15,000. Rivera then sought recourse to $85,000 of the $100,000 of UIM coverage available under her mother's policy. Rivera's special policy provided no UIM coverage whatsoever.

NJM denied Rivera's claim based on a step-down provision. The provision applies to an insured who is not a named insured under the NJM policy, but is a named insured under another policy "providing similar coverage" that is less than the NJM policy's UIM liability limit. The provision states that the maximum liability limit for such an insured shall step down to the liability limit "under any insurance providing coverage to that insured as a named insured." The provision states:

LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident.

However, subject to our maximum limit of liability for this coverage:

1. If:

   a. An insured is not the named insured, but is a family member, under this policy;
   b. That insured is a named insured under one or more other policies providing similar coverage; and

        c. All such other policies have a limit of
           liability for similar coverage which is
           less than the limit of liability for this
           coverage;

        then our maximum limit of liability for
        that insured, for all damages resulting
        from any one accident, shall not exceed
        the highest applicable limit of liability
        under any insurance providing coverage to
        that insured as a named insured.

        [(Emphasis added).]

Rivera filed an amended complaint against NJM seeking a declaratory judgment that she had recourse to UIM benefits under the NJM policy. NJM denied coverage and interposed other defenses. The parties then cross-moved for summary judgment on the step-down issue, asserting opposing interpretations of what constituted "similar coverage." NJM also argued, in the alternative, that Rivera did not have recourse to the $85,000 of UIM coverage because she was not a "family member" as defined in the NJM policy, as she resided elsewhere.

The trial court concluded that Rivera had "similar coverage" that triggered the step-down provision, which in turn left her with zero UIM benefits because she had no benefits under her own special policy. The court considered it illogical that the step-down provision would reduce the coverage of a person who had even a modicum of UIM coverage, but not the coverage of a person who had no UIM coverage at all.

Accordingly, the court denied Rivera's motion for partial summary judgment and granted NJM's motion for summary judgment dismissal. The court did not reach the issue of plaintiff's residency.

## II.

We exercise de novo review of the trial court's interpretation of an insurance policy on a motion for summary judgment. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). We are also bound by well-established principles of insurance contract interpretation, which the Supreme Court recently summarized:

> "In attempting to discern the meaning of a provision in an insurance contract, the plain language is ordinarily the most direct route." Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238, 948 A.2d 1285 (2008). If the plain language of the policy is unambiguous, we will "not 'engage in a strained construction to support the imposition of liability' or write a better policy for the insured than the one purchased." Ibid. (quoting Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 273, 765 A.2d 195 (2001)).
>
> When the provision at issue is subject to more than one reasonable interpretation, it is ambiguous, and the "court may look to extrinsic evidence as an aid to interpretation." Ibid. Only where there is a genuine ambiguity, that is, "where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage," should the reviewing court read the policy in favor of

the insured. <u>Progressive Cas. Ins. Co.</u>, <u>supra</u>, 166 <u>N.J.</u> at 274, 765 <u>A.</u>2d 195 (quoting <u>Weedo v. Stone-E-Brick, Inc.</u>, 81 <u>N.J.</u> 233, 247, 405 <u>A.</u>2d 788 (1979)). "When construing an ambiguous clause in an insurance policy, courts should consider whether clearer draftsmanship by the insurer 'would have put the matter beyond reasonable question.'" <u>Ibid.</u> (quoting <u>Doto v. Russo</u>, 140 <u>N.J.</u> 544, 547, 659 <u>A.</u>2d 1371 (1995)).

[<u>Templo Fuente De Vida</u>, <u>supra</u>, 224 <u>N.J.</u> at 200.]

Our courts have enforced UIM step-down provisions if "expressed in clear and unambiguous language." <u>Morrison v. Am. Int'l Ins. Co. of Am.</u>, 381 <u>N.J. Super.</u> 532, 538 (App. Div. 2005). Step-down provisions are legitimate "even though they may result in differential treatment of similar plaintiffs based on the existence of other available insurance." <u>Pinto v. N.J. Mfrs. Ins. Co.</u>, 183 <u>N.J.</u> 405, 412 (2005), <u>superseded in part by</u> <u>N.J.S.A.</u> 17:28-1.1(f) (prohibiting step-down provisions in certain business auto insurance policies). In particular, "a step-down clause in an insurance policy can restrict the amount of UIM coverage available to an individual who is not named in that policy to the limit of UIM coverage that the individual may recover under his or her own insurance policy." <u>Id.</u> at 413.

It is undisputed that Rivera is an "insured" under the NJM policy because she was operating her mother's vehicle at the time of the accident. NJM contends she is not entitled to UIM

benefits under its policy, because she may recover zero UIM benefits under her own policy. However, the language of the NJM policy does not achieve that result.

The step-down provision at issue applies if all of the following three conditions are met: (1) the "insured is not the named insured, but is a family member, under this policy"; (2) "[t]hat insured is a named insured under one or more other policies providing similar coverage"; and (3) "[a]ll such other policies have a limit of liability for similar coverage which is less than the limit of liability for this coverage . . . ." As for the first condition, Rivera is not the named insured under the NJM policy, but we assume, for the purposes of our analysis, that she is a family member. We note that NJM separately challenges that status.

The second and third conditions establish separate requirements. The second describes the nature of the insured's other policy. The insured making the claim under the NJM policy must be a named insured under the other policy, and that other policy must "provid[e] similar coverage." The third condition compares the limits of liability of the two policies: the other policy must "have a limit of liability for similar coverage which is less than the limit of liability for this coverage." If the other policy's "similar coverage" is less than the

A-2337-14T1

coverage provided under the NJM policy, "then [NJM's] maximum limit of liability for that insured . . . shall not exceed the highest applicable limit of liability under any insurance providing coverage to that insured as a named insured."

We conclude that the special policy does not provide "similar coverage" because it provides no UIM coverage whatsoever. The special policy, authorized by N.J.S.A. 39:6B-1(c), and described in N.J.S.A. 39:6A-3.3, is available only to certain Medicaid recipients of limited income. By law, a special policy "shall not provide . . . underinsured motorist coverage." N.J.S.A. 39:6A-3.3(c). The policy, sold to Rivera for $360 a year, provides only limited first-party benefits for emergency medical expenses, and a death benefit. N.J.S.A. 39:6A-3.3(b). It was designed to provide a mechanism for drivers of severely limited economic means to comply with the compulsory insurance law, instead of driving uninsured. N.J.S.A. 39:6A-3.3(a).

Although the NJM policy does not define "coverage" or "similar coverage," the term "coverage" is used in reference to distinct categories of risk. See Delcampo v. Ins. Underwriting Ass'n, 266 N.J. Super. 687, 700 (Law Div. 1993) ("[T]he term 'coverage' . . . connotes a distinct part of an insurance policy providing . . . insurance as to a definite risk or risks coming

within its terms. . . .")  The policy refers to "liability coverage," "personal injury protection coverage," "coverage for damage to your auto," and "uninsured motorist coverage."  Thus, in the context of the step-down provision, we construe "similar coverage" to mean "coverage similar to UIM coverage."  See Prather v. American Motorists Ins. Co., 2 N.J. 496, 502 (1949) (an insurance contract must be "read and considered as a whole.")

NJM conflates the second and third conditions.  It argues the step-down provision applies because Rivera "has her own policy . . . on which she is the named insured that provides a limit of liability 'for similar coverage' that is less than the NJM UM/UIM limits of liability."  We recognize that the third condition is susceptible to two interpretations, one of which favors NJM's position.  Construing "similar coverage" to mean "coverage similar to UIM coverage," one may contend that Rivera has a policy with a zero "limit of liability for [UIM coverage] which is less than the limit of liability" in the NJM policy.  Alternatively, one may contend Rivera has no limit of liability for UIM coverage because she has no UIM coverage at all.

However, we need not resolve the ambiguity in the third condition, inasmuch as Rivera does not satisfy the second condition.  In describing the other policy, the second condition

9                                          A-2337-14T1

requires that the other policy is "providing similar coverage." The word "similar" allows for "some degree of difference." <u>Pine Grove Manor v. Dir. Div. of Taxation</u>, 68 <u>N.J. Super.</u> 135, 142 (App. Div. 1961). It is "generally interpreted to mean that one thing has a resemblance in many respects, nearly corresponds, is somewhat like, or has a general likeness to some other thing . . . although in some cases 'similar' may mean 'identical' or 'exactly alike.'" <u>Fletcher v. Interstate Chem. Co.</u>, 94 <u>N.J.L.</u> 332, 334 (Sup. Ct. 1920) (holding that contract to sell "similar" printing presses did not require them to be "exactly alike"), <u>aff'd o.b.</u>, 95 <u>N.J.L.</u> 543 (E. & A. 1921).

Regardless of whether "similar" as used in the NJM policy means "identical" or allows for "some degree of difference," Rivera's policy does not provide "coverage similar to UIM coverage," because it does not provide any form of "UIM coverage" whatsoever. Even where two policies provided UIM coverage, we have found the coverage not to be "similar" so as to trigger a step-down provision where one provided gap coverage, and the other provided excess coverage. <u>Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Jeffers</u>, 381 <u>N.J. Super.</u> 13, 19-20 (App. Div. 2005) (comparing UIM coverage in New Jersey and Pennsylvania policies).

A contrary interpretation is not compelled by the fact that Rivera would be entitled to greater coverage as an insured under a special policy than if she had purchased a standard policy with UIM coverage at any limit less than the NJM policy provided. The result here is a consequence of NJM's own draftsmanship. See Magnifico v. Rutgers Cas. Ins. Co., 153 N.J. 406, 418 (1998) (noting that "insurers can modify policy language in an effort to address issues of UIM coverage and liability"). If Rivera had been a licensed driver who did not own an automobile at all, she could have gone without her own insurance entirely. See N.J.S.A. 39:6A-3 (compulsory insurance law pertains to "owner or registered owner of an automobile registered or principally garaged" in New Jersey). Had she driven her mother's vehicle under those circumstances, she would have been unaffected by the step-down provision.

We recognize that Rivera chose, presumably as a result of her financial circumstances, to purchase the special policy, and not to obtain UIM coverage at all. But Torres-White did select UIM coverage — not only for herself, but for other persons insured under her policy, such as family members driving her vehicle. Her reasonable expectations, based on the "similar coverage" condition of the step-down provision, should not be frustrated by denying her daughter benefits. See Nav-Its, Inc.

11

v. Selective Ins. Co., 183 N.J. 110, 118-19 (2005); French v. N.J. School Bd. Ass'n Ins. Group, 149 N.J. 478, 487, 495 (1997).

In sum, the step-down provision does not apply to Rivera because she is not a named insured under another policy "providing similar coverage." Consequently, NJM was not entitled to summary judgment dismissing Rivera's complaint.

III.

NJM argues that even if the step-down provision does not apply, its liability is limited because Rivera does not qualify as a "family member" under its policy. The policy provides that UIM coverage for a person who is neither a named insured nor a family member "shall not exceed the minimum limits required by New Jersey law for liability coverage set forth in N.J.S.A. 39:6A-3." That limit would be $15,000 in this case. As that limit is no greater than the limit of McCray's insurance, no UIM benefits would be available to Rivera if she is not a family member. A "family member" must be related to, and resident in the household of, the named insured. In challenging Rivera's residency in Torres-White's household, NJM notes that Rivera's own policy, as well as her amended complaint, indicate that she resides at an address other than her mother's.

Rivera contended that she was, in fact, a resident in her mother's household. She also argues that NJM is estopped from

challenging her residency, because NJM raised the issue for the first time in support of its motion for summary judgment. She contends that she detrimentally relied on NJM's previous silence in reaching her settlement with McCray.

The trial court did not reach the residency issue, but noted that a period of discovery would have been required. We agree. Since we reverse the grant of summary judgment on the step-down provision as it relates to what constitutes "similar coverage," we remand so that the trial court may address the residency issue after a period of discovery. Rivera's estoppel argument should be addressed initially by the trial court after completion of discovery.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION