217 N.J. Super. 126 (1987)
524 A.2d 1319
GERALDINE INGRAHAM, PLAINTIFF-RESPONDENT,
v.
THE TRAVELERS COMPANIES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 18, 1987.
Decided April 27, 1987.
Before Judges KING, DEIGHAN and HAVEY.
*127 Edward H. Keiper argued the cause for appellant (Richard A. DeMichele, attorney).
Darrell Fineman argued the cause for respondent (Capizola, Fineman & Kutner, attorneys).
The opinion of the court was delivered by KING, P.J.A.D.
This appeal is taken from a summary judgment in favor of a Personal Injury Protection (PIP) coverage claimant in an action against her own automobile insurer, The Travelers. The issue is whether plaintiff can obtain PIP benefits from her own insurer where she was not actually struck by a vehicle. The Law Division judge held that actual contact was not necessary. We disagree and reverse.
The facts are undisputed. On August 10, 1984 plaintiff was riding her bicycle on Leonard Cake Road in Franklinville, Gloucester County with a friend. They were going east in singlefile against on-coming traffic when a large car travelling west came toward them. The car came very close to hitting plaintiff, forced her off the road, and caused her to fall from her bike. If she had not swerved to avoid the car, it would have struck her. The driver of the car never stopped and to date his identity is unknown. As a result of her fall, her left leg was severely injured and her left foot was amputated in November 1986.
All agree that plaintiff was a qualified "pedestrian" within the meaning of our "no-fault" statute, the New Jersey Automobile Reform Act, N.J.S.A. 39:6A-1 et seq. See N.J.S.A. 39:6A-2(b). The pertinent section of the act controlling resolution of plaintiff's claim for benefits is N.J.S.A. 39:6A-4 which provides in pertinent part
Every automobile liability insurance policy insuring an automobile as defined in this act against loss resulting from liability imposed by law for bodily injury, death and property damages sustained by any person arising out of ownership maintenance or use of an automobile shall provide personal injury protection coverage, as defined herein below, under provisions approved by the Commissioner *128 of Insurance, for the payment of benefits without regard to negligence, liability or fault of any kind, to the named insured and members of his family residing in his household who sustained bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile or as a pedestrian, being struck by an automobile or by an object propelled by or from an automobile, to other persons sustaining bodily injury while occupying, entering into, alighting from or using the automobile of the named insured, with the permission of the named insured, and to pedestrians, sustaining bodily injury caused by the named insured's automobile or struck by an object propelled by or from such automobile. N.J.S.A. 39:6A-4. [Emphasis added].
To qualify for benefits under her own policy as a pedestrian plaintiff must prove that she was "struck by an automobile or by an object propelled by or from an automobile." Such was not the case here.
We are asked to look to N.J.S.A. 39:6A-16 which states that the act "shall be liberally construed so as to effect the purposes thereof." E.g., Gambino v. Royal Globe Ins. Co., 86 N.J. 100, 106 (1981) (phrase "income producer" left room for statutory interpretation). Unfortunately for plaintiff, we must conclude here that the statute allows no room for construction. The language is clear and must be applied as written. The Legislature made a judgment on when PIP would apply and when pedestrians must look elsewhere for recovery, to their own first-party medical carrier, here Blue Cross/Blue Shield, and to other sources for disability and income-continuation benefits.
The words "or, as a pedestrian, being struck by an automobile" entered the statute by amendment in L. 1983. c. 362, § 7. These words replaced the previously broader language  "involving an automobile"  language which would clearly provide plaintiff coverage in this case. The 1983 amendments were part of a package of amendatory no-fault legislation which had the partial purpose of cost containment, according to the sponsor's and the legislative committee's statement. The statement accompanying the bill to the floor related: "5. No-fault and Related Clean-up Provisions. These provisions mainly are designed to tighten statutory eligibility requirements for personal injury protection coverage so as to comport with the original intent of the no-fault law." As we stated in Uzcatequi-Gaymon *129 v. N.J. Mfgr. Ins. Co., 193 N.J. Super. 71, 75 (App.Div. 1984): "The Legislature obviously intended more restrictive coverage than that afforded by the language `involving an automobile'." See JFK Memorial Hospital v. Kendal, 205 N.J. Super. 456 (Law Div. 1985); Cf., Schomber v. Prudential Ins. Co., 214 N.J. Super. 309 (Law Div. 1986). The intent most certainly was to reverse the results of then-recent cases broadly construing the phrase "involving an automobile." See Purdy v. Nationwide Mut. Ins. Co., 184 N.J. Super. 123 (App.Div. 1982) (no-contact accident causing injury to driver of "dirt bike" operated off public road caused by distracting effects of automobile); Vicari v. Nationwide Ins., 174 N.J. Super. 463 (App. Div. 1980) (insured killed while clearing a path for his car).
We agree with plaintiff that a reversal results in an illogical result. If she had stood her ground and been struck by the car, she could recover. But the Legislature has made the decision where the PIP boundaries are to be drawn and we must enforce that decision. Sutherland explains the principle this way.
A basic insight about the process of communication was given classic expression by the Supreme Court of the United States when it declared that "the meaning of the statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, ... the sole function of the courts is to enforce it according to its terms." The court disclaimed that it was engaged in the process of interpretation when it decided what the statute "plainly" meant. It said "Where the language is plain and admits of no more than one meaning the duty of interpretation does not arise and the rules which are to aid doubtful meanings need no discussion."
What has come to be known as the plain meaning rule has been given expression in a variety of ways: "When the intention of the legislature is so apparent from the face of the statute that there can be no question as to its meaning, there is no room for construction." "It is not allowable to interpret what has no need of interpretation." "There is no safer nor better settled canon of interpretation than that when language is clear and unambiguous it must be held to mean what it plainly expresses." [2A Sutherland, Statutory Construction, (4th ed. 1984) § 46.01 at 73].
See Russell v. Saddle Brook Restaurant Corp., 199 N.J. Super. 186, 188 (App.Div. 1985) ("This principle applied here leaves no room for judicial interpretation."); Remedial Educ. & Diag. v. Essex Cty. Educ. Service, 191 N.J. Super. 524, 528 (App.Div. 1983) ("[I]t is fundamental that what the Legislature pointedly *130 omits the courts will not supply."); Stix v. Greenway Development Co., 185 N.J. Super. 86, 90 (App.Div. 1982) (Our function "is to enforce [the statute] according to its terms.").
Reversed.