290 N.J. Super. 570 (1996)
676 A.2d 556
LOUIS AVERSANO, PLAINTIFF-APPELLANT,
v.
ATLANTIC EMPLOYERS INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted February 28, 1996.
Decided April 25, 1996.
*571 Before Judges LANDAU, KLEINER and HUMPHREYS.
Grossman & Warren, attorneys for appellant (Melvin W. Warren, on the brief).
Kelaher, Garvey, Ballou & Van Dyke, attorneys for respondent (Mark T. Connell, on the brief).
The opinion of the court was delivered by LANDAU, J.A.D.
Plaintiff Louis Aversano filed a Law Division complaint against his automobile insurance carrier, defendant Atlantic Employers Insurance Company, asserting that defendant wrongfully denied personal injury protection benefits mandated by N.J.S.A. 39:6A-4, -5.[1] Defendant's motion for summary judgment was granted and plaintiff appealed. We affirm.
*572 For purposes of this appeal, as on the motion, we accept plaintiff's deposition testimony that he was injured by stepping into a pothole in a parking lot as he was walking towards his car with key in hand, right arm extended, reaching for the lock. His wife had "just about" gotten to the passenger door. Plaintiff first made contact with his car "[o]n my way down."
As amended by L. 1983, c. 362, § 7, N.J.S.A. 39:6A-4 requires that every automobile liability insurance policy "shall provide personal injury protection coverage ... to the named insured and members of his family residing in his household who sustained bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile." Plaintiff argues that this language must be interpreted to provide coverage on the above facts. Neither party has favored us with the text of the actual insuring agreement, but as the arguments center upon the quoted statutory language, we may safely assume that the policy follows the statute.
Relying upon Morgan v. Prudential Insurance Co. of America, 242 N.J. Super. 638, 577 A.2d 1300 (App.Div.), certif. denied, 122 N.J. 370, 585 A.2d 377 (1990), and Kordell v. Allstate Insurance Co., 230 N.J. Super. 505, 554 A.2d 1 (App.Div.), certif. denied, 117 N.J. 43, 563 A.2d 813 (1989), the motion judge concluded:
Pursuant to the wording, and the purpose of the statute at issue, the Court is satisfied that the plaintiff in this case, is not covered by the statute, when the vehicles doors were closed, and locked, and the keys have not yet been inserted in the keyhole.
The plaintiff, under these circumstances, cannot be deemed to be entering, under [N.J.S.A.] 39:6A-4. The Court is also satisfied that there is no causal link between the vehicle and the accident to allow for PIP benefits.
The mere fact that an automobile is in the vicinity of an accident, does not transform that accident into one for which PIP benefits are available.
Plaintiff urges on appeal that this analysis is faulty because the clear intent of the Legislature in using the words "entering into ... an automobile" was to broaden the statute to include people *573 entering into a vehicle. The prior language of N.J.S.A. 39:6A-4 required payment of PIP benefits to an insured who sustained bodily injury as a result of an accident "involving an automobile." See Vasil v. Zullo, 238 N.J. Super. 572, 576, 570 A.2d 464 (App.Div. 1990). Plaintiff says that it was his intention to reach out his hand for the purpose of opening the door to the vehicle and that this intent, coupled with proximity of the automobile, is sufficient to provide a nexus supportive of PIP coverage. He points out that he would not have been at the location except to enter his car.
In Lindstrom v. Hanover Insurance Co., 138 N.J. 242, 649 A.2d 1272 (1994), the Court recognized the statutory admonition that the New Jersey Automobile Reparation Reform Act must be "`liberally construed so as to effect the purpose thereof.'" Id. at 247, 649 A.2d 1272 (quoting N.J.S.A. 39:6A-16).
Necessarily, however, Lindstrom also recognized that the 1983 amendment to section four of the Act was intended to restrict coverage, particularly as to the earlier broad judicial readings given to the words "involving an automobile." The Court set out as an appropriate test the insured's objectively reasonable expectations concerning first party coverage, but recognized that "[a]ccidents that do not arise out of the use of an automobile or are not of the type that are within the contemplation of the parties do not fulfill the test's requirements." Id. at 251, 649 A.2d 1272. It is significant that the Court also cited with favor the Morgan and Kordell cases relied upon by the motion judge, as well as our decisions in Vasil, supra, and Uzcatequi-Gaymon v. New Jersey Manufacturers Insurance Co., 193 N.J. Super. 71, 472 A.2d 163 (App.Div. 1984). Earlier cases, such as Purdy v. Nationwide Mutual Insurance Co., 184 N.J. Super. 123, 445 A.2d 424 (App.Div. 1982), and Vicari v. Nationwide Insurance, 174 N.J. Super. 463, 416 A.2d 977 (App.Div.), certif. denied, 85 N.J. 464, 427 A.2d 562 (1980), decided before the 1983 amendment to section four, had afforded PIP benefits where an automobile influenced the actions of the injured party without contact.
*574 In Ingraham v. Travelers Cos., 217 N.J. Super. 126, 524 A.2d 1319 (App.Div. 1987), aff'd o.b., 110 N.J. 67, 539 A.2d 733 (1988), we recognized that the legislative intent of L. 1983, c. 362, § 7 "most certainly was to reverse the results of then-recent cases broadly construing the phrase `involving an automobile,'" such as Purdy and Vicari. Ingraham, supra, 217 N.J. Super. at 129, 524 A.2d 1319. Contrary to plaintiff's assertion, the amending words "occupying, entering into, alighting from or using an automobile" were not intended to broaden the reach of section four, but to limit it. As we noted in Vasil, supra, 238 N.J. Super. at 576, 570 A.2d 464, the Introductory Statement to Assembly Bill 3981, later enacted as chapter 362, read: "These provisions mainly are designed to tighten statutory eligibility requirements for personal injury protection coverage so as to comport with the original intent of the no-fault law."
Judge Brody summarized the statutory change in Morgan, supra, 242 N.J. Super. at 642, 577 A.2d 1300, saying: "the Legislature ... did not intend that PIP coverage provide protection to people injured in accidents for which there would not have been automobile liability coverage even if fault could be established." This case involves interpretation of a statute, not resolution of an ambiguous policy provision dispute.
We believe, given the clearly restrictive intent of the 1983 amendment, that its language precludes a judicial interpretation that the insured's fall in this case was legislatively intended to be covered by the personal injury protection provisions of the statute. We accept as true plaintiff's contention that he only encountered the pothole because he was about to enter his car. Practically everyone who traverses a parking lot, however, has just alighted from a car or is heading for a car with the intent to enter.
The statute uses the words, "while occupying, entering into, alighting from or using an automobile." The word "entering" is alone sufficient to denote the process of crossing some threshold, not merely approaching it. It was legislatively coupled with the words "while" and "into" with the announced purpose of *575 tightening eligibility. The word "into" is described by Webster's Ninth New Collegiate Dictionary 634 (1987) as "used as a function word to indicate entry, introduction, insertion, superposition, or inclusion."
If mere proximity to the intended point of entry, coupled with a demonstration of intent to enter, were to be deemed sufficient under the statute, highly subjective and indefinite assessments would have to be made. What distance would be deemed sufficiently close? How much intent to enter would have to be manifested? A "bright line" is preferable.
We hold that "while entering into" was intended by the Legislature to denote a process of entry which begins, at the earliest, when physical contact with the vehicle is made with intent to enter. Here, the accidental fall occurred prior to that point in time. The later incidental contact with the vehicle came about not during entry, but as a result of the fall.
We believe that our decision is consistent with Lindstrom. That decision, it must be remembered, concerned a "stranger" pedestrian, not, as here, a named insured. This distinction and a history of the restrictive legislative purpose in enacting the 1983 amendment was carefully set forth in Darel v. Pennsylvania Manufacturers Association Insurance Co., 114 N.J. 416, 422-23, 555 A.2d 570 (1989), by Justice Clifford, author of the majority opinion in Lindstrom.
The judgment of the Law Division is affirmed.
HUMPHREYS, J.A.D. (dissenting).
Plaintiff testified in his deposition that he was in the process of entering his car. He had his car key in his hand. It was dark, and he was trying to find the keyhole in the car door. As he was about to insert his key, he fell in a pot hole. As he fell, he came into contact with his car.
The majority holds that even when "viewed in the light most favorable" to the plaintiff and granting the plaintiff "all the *576 favorable inferences," see Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 536, 540, 666 A.2d 146 (1995), a rational fact finder could not conclude from these facts that the plaintiff was injured while "entering into" his automobile. See N.J.S.A. 39:6A-4. This holding is contrary to fundamental principles governing the construction of this statute as well as to the reasonable expectations of an insured as to his insurance coverage.
The underlying principles of our New Jersey no fault insurance statutes were set forth by Justice Clifford in Lindstrom v. Hanover Ins. Co., 138 N.J. 242, 247-248, 649 A.2d 1272 (1994) as follows:
We begin by setting out the basic principles that guide our deliberation. New Jersey's no-fault compulsory automobile-insurance scheme, found in the New Jersey Automobile Reparation Reform Act, N.J.S.A. 29:(sic)6A-1 to -35 (the Act), must be "liberally construed so as to effect the purpose thereof...." This Court has characterized PIP coverage as "`a social necessity' that should be given `the broadest application consistent with the statutory language....'" Such a broad application represents public policy favoring coverage.... Insureds are entitled to coverage in accordance with their objectively-reasonable expectations that are supported by any fair interpretation of the law.... In respect of the occurrence, the Legislature sought to ensure "the broadest coverage possible so long as an automobile was involved in that which happened...." Accordingly, "where the Legislature has `made a choice of language [that] fairly brings a given situation within a statute, it is unimportant that the particular application may not have been contemplated by the legislators....'"
[Citations omitted.]
The Court in Lindstrom said: "The 1984 amendment tightened PIP eligibility requirements generally, ... but broadened coverage for family-member pedestrians. Moreover, section four continued to provide the broadest protection consistent with its language." Id. at 248, 649 A.2d 1272 (emphasis added). Section four contains the "entering into" language construed in this appeal; thus that language should be construed to provide the "broadest protection consistent with its language." Ibid.
The Court in Lindstrom described the broad scope of Section four as follows:
After the restrictive language of the 1983 amendment, the trend in the development of section four has been to broaden family-member pedestrian coverage somewhat. Although to trigger PIP coverage the automobile must provide more *577 than merely the setting for the accident, no amendment has changed the requirement that the Act be liberally construed to give the broadest application consistent with its language. The guiding principle remains intact: to accommodate the public interest behind the Act, courts must favor the insured and find coverage if possible.

[Lindstrom, supra, 138 N.J. at 249, 649 A.2d 1272 (emphasis added).]
The Court in Lindstrom held that the facts there revealed a substantial nexus between the accident and the use of the automobile. PIP coverage was therefore found for a "drive-by" shooting of a person attending an outdoor party. Id. at 244, 649 A.2d 1272. See also Burns v. Market Transition Facility of New Jersey, 281 N.J. Super. 304, 309-311, 657 A.2d 472 (App.Div. 1995) (good samaritan rendering aid to injured driver has substantial nexus with use of the car and therefore is entitled to PIP coverage).
The principles set forth in Lindstrom compel a finding of coverage here. A liberal and broad construction of the statute is plainly contravened by a holding that because the plaintiff's key did not quite reach the keyhole, he is as a matter of law not entitled to coverage from his insurance company. Such a mechanistic approach does not accord with the "guiding principle" that "courts must favor the insured and find coverage if possible." Id. at 249, 649 A.2d 1272. Moreover, the ordinary and reasonable expectations of an insured would be that when he is about to insert his key in the keyhole of his car, he is "entering into" his car and therefore entitled to PIP coverage by his insurance company.
The majority fashions a bright line test. Did the key hit or not hit the keyhole? The proper test, however, is whether a trier of fact could reasonably find that the injury had a substantial nexus with the use of an automobile. Lindstrom, supra, 138 N.J. at 246, 649 A.2d 1272. Summary judgment on this fact sensitive issue should not have been entered against the insured. Brill v. Guardian Life Ins. Co. of America, supra, 142 N.J. at 523, 666 A.2d 146; Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74, 110 A.2d 24 (1954). The majority opinion in this case *578 is out of step with New Jersey's no fault insurance law. I respectfully dissent.
NOTES
[1] Defendant's brief asserts that plaintiff has also filed a separate action against the parking lot in which he fell. As both parties filed R. 4:5-1 certifications, and the record provided does not furnish support for the assertion, we do not address the R. 4:30A entire controversy issue implicitly raised.