975 A.2d 1049 (2009)
409 N.J. Super. 82
Leslie Lauren SEVERINO, Administratix ad Prosequendum of the Estate of Julio Cesar Severino, deceased, Leslie Lauren Severino, Bienvenida De Leon, and Juan E. Severino, Individually, Plaintiffs-Respondents/Cross-Appellants,
v.
Jermaine MALACHI, Kimberly Kilroy, NJM Group, New Jersey Manufacturers Insurance Company, New Jersey Casualty Insurance Company, and New Jersey Indemnity Insurance Company, Defendants, and
New Jersey Re-Insurance Company, Defendant-Appellant/Cross-Respondent.
Nayda Rebollo, Administratix ad Prosequendum of the Estate of Yavalier Rodriguez, deceased, Nayda Rebollo, and Pedro E. Rodriguez, Individually, Plaintiffs-Respondents,
v.
Jermaine Malachi, Kimberly Kilroy, NJM Group, New Jersey Manufacturers Insurance Company, New Jersey Casualty Insurance Company, and New Jersey Indemnity Insurance Company, Defendants, and
New Jersey Re-Insurance Company, Defendant-Appellant.
DOCKET NOS. A-0248-07T3, A-0299-07T3.
Superior Court of New Jersey, Appellate Division.
Argued February 10, 2009.
Decided August 12, 2009.
*1051 Joseph A. Campbell, Newark, argued the cause for appellant/cross-respondent New Jersey Re-Insurance Company (McElroy, Deutsch, Mulvaney & Carpenter, L.L.P., attorneys; Thomas F. McGuane, of counsel; Mr. Campbell, on the brief).
Steven Benvenisti, Teaneck, argued the cause for respondent/cross-appellant Leslie Lauren Severino (Davis, Saperstein & Salomon, P.C., attorneys; Mr. Benvenisti, of counsel; Terrence Smith, on the brief).
Andrew C. Abrams argued the cause for respondent Nayda Rebollo (Abrams & Wofsy, Jersey City, attorneys; Mr. Abrams, on the brief).
Before Judges PARKER, YANNOTTI and LeWINN.
The opinion of the court was delivered by
YANNOTTI, J.A.D.
On November 1, 2003, Julio Cesar Severino (Severino) and Yavalier Rodriguez (Rodriguez) drove to Jersey City in a 1980 Toyota owned by Severino's fiancé, Viviana Muniz (Muniz). Severino and Rodriguez exited the vehicle and were struck by an automobile. Severino and Rodriguez died as a result of injuries sustained in the accident.
Plaintiffs filed these actions in the trial court and asserted various claims, including claims against defendants NJM Group (NJMG), New Jersey Manufacturers Insurance Company (NJM), New Jersey Re-Insurance Company (NJR), New Jersey Casualty Insurance Company (NJCI) and New Jersey Indemnity Insurance Company (NJI) for underinsured motorist (UIM) and personal injury protection (PIP) benefits under an insurance policy covering the Muniz vehicle.[1] Plaintiffs thereafter consented to the dismissal of their claims against NJMG, NJM, NJCI and NJI and pursued their claims for UIM and PIP benefits against NJR, the entity that issued the policy.
The trial court found that Severino was not entitled to coverage under the Muniz policy as a "named insured," but that plaintiffs are nevertheless entitled to UIM and PIP benefits because, at the time of the accident, Severino and Rodriguez were "occupying" the Muniz vehicle. NJR appeals and the Severino plaintiffs cross-appeal from the orders memorializing these determinations. For the reasons that follow, we conclude that plaintiffs are not entitled to UIM or PIP benefits under the Muniz policy because Severino was not a "named insured" under the policy and because Severino and Rodriguez were not *1052 "occupying" the covered vehicle at the time of the accident.

I.
The facts regarding the accident are essentially undisputed. Louis Soba (Soba) was with Severino and Rodriguez in the Muniz automobile prior to the accident. At his deposition, Soba testified that, during the evening before the accident, he attended a party at a club in New York City. Severino and Rodriguez met Soba at the club at around 11:30 p.m. They remained there about four hours.
Severino, Rodriguez and Soba left the club. They stopped briefly at a grocery store in New York City to get something to eat. They got into Muniz's automobile to return to Jersey City. Severino was driving. Rodriguez was in the front passenger seat and Soba was in the rear.
Soba said that Severino was not intoxicated and that he did not have any problem operating the car during their return to Jersey City. They planned to stop at Severino's apartment on Palisade Avenue, where Severino and Muniz were going to reside. Severino had just purchased new furniture and he wanted Soba and Rodriguez to see the apartment and the new furniture. Thereafter, Severino intended to drive Soba and Rodriguez to their homes in Jersey City.
Severino parked the car on the northbound side of Palisade Avenue and turned off the engine. Severino got out of the car on the driver side and Rodriguez exited on the front passenger side. They closed the doors of the car. Soba leaned over to the floor to pick up his sandwich and, a few seconds later, heard a "boom." An automobile had struck the car. The driver of that automobile was Jermaine J. Malachi (Malachi). He was driving a vehicle owned by Kimberly Kilroy (Kilroy).
Soba testified that Severino and Rodriguez had just gotten out of the car and "[e]verything happened within seconds." He did not realize that Severino and Rodriguez had been hit until he exited the car. Soba observed their bodies lying about fifty feet from the car. He also observed that Malachi had struck several other vehicles parked on Palisade Avenue.
Soba initially estimated that about fifteen or twenty seconds elapsed from the time Severino and Rodriguez exited the car until they were struck. Later in his deposition, however, Soba testified that about eight seconds had elapsed. On cross-examination, Soba stated that Severino and Rodriguez were crossing the street when they were hit. He said that Severino and Rodriguez were probably several feet away from the car when they were struck.
The police investigated the accident and filed a report that includes measurements taken at the scene. The report identifies a point of impact. The officer who took the measurements was not deposed; therefore, the record does not reveal the basis for his findings regarding the point of impact.
The insurance policy covering Kilroy's vehicle only provided coverage in the amount of $25,000 per person and $50,000 per occurrence. Plaintiffs sought UIM coverage under the Muniz policy, which provides that NJR will pay compensatory damages that an "insured" is entitled to recover from the owner or operator of an underinsured vehicle as a result of bodily injury sustained in an accident. As it pertains to underinsured benefits, the policy defines "insured" as
1. You or any family member.
2. Any other person occupying your covered auto.

*1053 3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in "1." or "2." above.
The plaintiffs in the Severino case filed a motion for summary judgment, seeking a declaration that Severino was entitled to UIM benefits under the Muniz policy. The plaintiffs in the Rodriguez case joined in the motion. NJR opposed the motion and filed a cross-motion seeking a determination that Severino and Rodriguez were not entitled to UIM coverage because they were not "occupying" the Muniz vehicle when they sustained their fatal injuries.
The trial court considered the motions on May 26, 2006, and placed its decision on the record on that date. The court found that plaintiffs had established a "sufficient and substantial nexus between the insured vehicle and the injuries that [Severino and Rodriguez] sustained so as to compel UIM coverage."
The court accordingly entered an order on June 5, 2006, granting plaintiffs' motion for UIM coverage and denying NJR's cross-motion for summary judgment on plaintiffs' UIM claims. NJR thereafter filed a motion for reconsideration, which the trial court denied by order entered on September 26, 2006. NJR filed a motion for leave to appeal, seeking review of the trial court's interlocutory decision. We denied that motion on September 25, 2006.
Thereafter, plaintiffs settled their claims with Malachi and Kilroy for the liability limits under the policy covering the Kilroy vehicle. The plaintiffs in the Severino action then filed a motion seeking a determination that Severino was entitled to coverage under the Muniz policy on an alternative basis, specifically that Severino was a "named insured" under the Muniz policy. The plaintiffs additionally asserted that they were entitled to PIP death benefits under the policy covering the Muniz vehicle.
The trial court considered this motion on August 3, 2007, and determined that Severino was not a "named insured" under the Muniz policy. The court found, however, that plaintiffs in both actions were entitled to PIP benefits because they were "occupants" of the vehicle, as the court had previously determined.
The court entered an order dated August 3, 2007, memorializing its findings. The plaintiffs in the Severino action filed a motion for reconsideration of the court's determination that Severino was not a "named insured" under the Muniz policy. The trial court filed an order on October 5, 2007, denying the motion. These appeals followed.

II.
NJR argues that the trial court erred by concluding that Severino and Rodriguez were entitled to UIM benefits under the Muniz policy because there was a "substantial nexus" between the accident and the covered vehicle. Our resolution of this issue is informed by the Supreme Court's decisions in Mondelli v. State Farm Mutual Automobile Insurance Co., 102 N.J. 167, 506 A.2d 728 (1986), and Torres v. Travelers Indemnity Co., 171 N.J. 147, 793 A.2d 592 (2002), as well as our opinion in Macchi v. Connecticut General Insurance Co., 354 N.J.Super. 64, 804 A.2d 596 (App.Div.), certif. denied, 175 N.J. 79, 812 A.2d 1111 (2002).
In Mondelli, the Court considered whether the plaintiff was "occupying" an insured vehicle for purposes of establishing uninsured motorist (UM) coverage. Mondelli, supra, 102 N.J. at 169, 506 A.2d 728. The plaintiff sought UM benefits under a policy covering his girlfriend's car. Ibid. On the day of the accident, the *1054 plaintiff had taken his girlfriend's car to be serviced at a garage where he worked as an auto mechanic. Id. at 170, 506 A.2d 728. Thereafter, the plaintiff drove the car to a home where his girlfriend was working as a babysitter. Ibid. She had driven there in the plaintiff's car. Ibid.
When the homeowners returned, the plaintiff and his girlfriend intended to leave in their own cars. Ibid. The plaintiff's girlfriend got in her car, which was parked at the curb. Ibid. The plaintiff was standing in the street, with his arm resting on the roof of the car when he was struck by another vehicle that drove away without stopping. Ibid.
The Court in Mondelli stated that the determination of whether a person is "occupying" a vehicle for purposes of UM coverage must be determined on a "case-by-case" basis. Id. at 172, 506 A.2d 728. The Court concluded that the plaintiff was "occupying" the vehicle at the time he was struck. Id. at 172-73, 506 A.2d 728. The Court noted that the insurance policy defined the term "occupying" as "`in or upon or entering into or alighting from'" the insured vehicle. Id. at 171, 506 A.2d 728.
The Court found that the plaintiff met this definition because he was "upon" the insured vehicle at the time of the accident. Id. at 171-73, 506 A.2d 728. Further, the Court concluded that he did not have to show that he had been on or near the car in connection with his immediate use of it as a means of transportation. Ibid. The Court noted, however, that the "`[m]ere coincidental connection between the accident and some touching of the car would not be enough'" to establish coverage. Id. at 172, 506 A.2d 728 (quoting Mondelli v. State Farm Mut. Auto. Ins. Co., 193 N.J.Super. 522, 532, 475 A.2d 76 (App.Div. 1984) (Petrella, J.A.D., concurring in part and dissenting in part)).
The Court addressed a similar issue in Torres. In that case, the plaintiff was working as a warehouse manager for a company. Torres, supra, 171 N.J. at 147-48, 793 A.2d 592. A delivery truck had stopped at the warehouse to deliver some packages and, after the truck departed, the plaintiff discovered that a package was missing. Id. at 148, 793 A.2d 592. The plaintiff drove in a company van to look for the delivery truck and the missing package. Ibid. He located the truck, which was double-parked nearby. Ibid.
The plaintiff stopped his van behind the delivery truck and, with the driver's permission, entered the truck to look for the missing package. Ibid. The plaintiff said that he believed that he left the engine in the van running when he exited that vehicle. Ibid. The plaintiff could not find the package. Ibid. He exited the truck on the driver's side and began to walk back to the van. Ibid. The plaintiff was a few inches from the van when he was struck by another truck, which was uninsured. Ibid.
The plaintiff sought UM benefits under the policy covering his employer's van. Ibid. According to the policy, the persons insured included "`[a]nyone ... occupying a covered auto or a temporary substitute for a covered auto.'" Id. at 149, 793 A.2d 592. The policy defined the term "occupying" as "`in, upon, getting in, on, out or off.'" Ibid.
The Torres Court held that, "in order to obtain UM coverage where occupancy is in issue, a plaintiff is required to establish a substantial nexus between the insured vehicle and the injury sustained." Ibid. The Court determined that the plaintiff had established "a `sufficient nexus' between the vehicle and the accident to require coverage." Ibid.
In Macchi, the plaintiff was driving a motor vehicle owned by her estranged husband's business. Macchi, supra, 354 *1055 N.J.Super. at 68, 804 A.2d 596. The plaintiff was on the way to a video store when she observed a one-car accident on the other side of the road. Ibid. The plaintiff stopped and told the other occupant of the car that she "`would be right back.'" Ibid. She left her purse in the car. Ibid. The car's engine was running and the lights were on. Ibid. After the plaintiff exited the car, another vehicle collided with the disabled car, causing that vehicle to strike her. Ibid.
The plaintiff sought UM and UIM coverage under the policy covering the car. Id. at 68-69, 804 A.2d 596. The policy provided UIM coverage to any person "occupying" the vehicle and defined "occupying" as "`in, upon, getting in, on, out or off.'" The trial court held that the plaintiff was not "occupying" the automobile because her activity "`was not substantially associated with her occupancy of the motor vehicle[.]'" Id. at 71, 804 A.2d 596. We reversed, stating that:
[t]he facts in Torres are, for all intents and purposes, indistinguishable from those before us in this matter. In both cases, the claimant drove the covered vehicle to the place where the accident occurred and, leaving the engine running, stepped from the vehicle to perform an essential task with every intention of returning to the vehicle to continue the journey. The one factual difference that the claimant in Torres was discharging his employment duties in driving the covered vehicle and that plaintiff herein was on a personal errand is of no consequence in applying the pertinent language of the insurance policy.
[Id. at 72, 804 A.2d 596.]
Applying the principles enunciated in Mondelli, Torres and Macchi, we conclude that plaintiffs failed to establish the requisite "substantial nexus" between the accident and the Muniz vehicle. As stated previously, Severino and Rodriguez were not in or getting out of the Muniz car when they were hit. They had already exited the vehicle and closed the doors of the car. Furthermore, there is no evidence that either Severino or Rodriguez was leaning upon or touching the Muniz vehicle when they were struck, as was the case in Mondelli.
Moreover, Severino did not leave the vehicle with its lights on or its engine running in order to perform some essential task, as was the case in Torres and Macchi. Severino's and Rodriguez's journey from New York City to Severino's apartment had concluded when Severino parked the car and turned off the engine. According to Soba, Severino and Rodriguez exited the car to enter Severino's apartment. They intended to return to the car at some point so that Severino could drive Rodriguez and Soba to their homes. Even so, Severino's and Rodriguez's use and occupancy of the vehicle had ended when they sustained their fatal injuries.
We therefore conclude that Severino and Rodriguez were not entitled to UIM coverage under the Muniz policy because they were not "occupying" the covered vehicle at the time of the accident.

III.
We next consider whether the trial court erred by concluding that Severino and Rodriguez were entitled to PIP benefits under the Muniz policy. The PIP statute provides that:
every standard automobile liability insurance policy ... shall contain personal injury protection benefits for the payment of benefits ... to the named insured and members of his family residing in his household who sustain bodily injury as a result of an accident while *1056 occupying, entering into, alighting from or using an automobile, or as a pedestrian, caused by an automobile or by an object propelled by or from an automobile, and to other persons sustaining bodily injury while occupying, entering into, alighting from or using the automobile of the named insured, with permission of the named insured.
[N.J.S.A. 39:6A-4.]
In order to determine whether PIP benefits must be paid with regard to a person who sustains bodily injury while "occupying" a covered vehicle, we apply the same "substantial nexus" test that is applied when determining whether a person is entitled to UM or UIM coverage. Svenson v. Nat'l Consumer Ins. Co., 322 N.J.Super. 410, 413, 731 A.2d 91 (App.Div. 1999) (citing Smaul v. Irvington Gen. Hosp., 209 N.J.Super. 592, 595, 508 A.2d 1147 (App.Div.1986), aff'd, 108 N.J. 474, 530 A.2d 1251 (1987)).
As stated previously, plaintiffs failed to establish a "substantial nexus" between the covered vehicle and the accident. Plaintiffs have not shown that Severino and Rodriguez were "occupying, entering into, alighting from or using" Muniz's automobile when they sustained their fatal injuries. N.J.S.A. 39:6A-4. Therefore, the trial court erred by finding that plaintiffs are entitled to PIP benefits under the Muniz policy.
Our decision in Aversano v. Atlantic Employers Insurance Co., 290 N.J.Super. 570, 676 A.2d 556 (App.Div.1996), affirmed o.b., 151 N.J. 490, 701 A.2d 129 (1997), supports this conclusion. In that case, the plaintiff was injured when he stepped into a pothole in a parking lot. Id. at 572, 676 A.2d 556. The plaintiff had been "walking towards his car with key in hand, right arm extended, reaching for the lock." Ibid. The plaintiff sought PIP benefits on the ground that he sustained an injury while "`occupying, entering into, alighting from or using an automobile.'" Ibid. (quoting N.J.S.A. 39:6A-4).
We determined that the plaintiff was not entitled to PIP benefits because he was not injured while "entering into" the vehicle. Id. at 574-75, 676 A.2d 556. The plaintiff was "merely approaching" the car when he stepped into the pothole. Id. at 574, 676 A.2d 556. We concluded that "mere proximity" and an "intent to enter" the covered vehicle are not sufficient to establish entitlement to PIP benefits. Id. at 575, 676 A.2d 556. We held that, as used in the statute, the phrase "while entering into" means "a process of entry which begins, at the earliest, when physical contact with the vehicle is made with intent to enter." Ibid.
In this case, Severino and Rodriguez were out of the Muniz vehicle when they were struck. They were either standing adjacent to the covered vehicle or, as Soba reported, crossing the street, when they were hit. As we stated in Aversano, "mere proximity" to a covered vehicle is insufficient to establish entitlement to PIP benefits.

IV.
In their cross-appeal, plaintiffs in the Severino case alternatively argue that Severino was entitled to coverage under the Muniz policy because he was a "named insured" under that policy. We are convinced that the trial court correctly rejected this claim.
The record shows that Muniz first applied for coverage from NJM in September 2002. Muniz obtained auto insurance for a 2003 Honda for the period from October 23, 2002 through October 23, 2003. Severino's name was not mentioned on the declarations page. In December 2002, a 1980 Toyota was added to the policy. According *1057 to Muniz, her father had purchased the car and turned it over to her.
In October 2003, Muniz contacted NJR concerning the renewal of the policy and spoke to a company representative. The conversation was recorded. Muniz said that she was thinking of "getting rid of" the 1980 Toyota and insuring another car, specifically a 1994 Chrysler. Muniz said that she had picked up the car the day before and it was parked in front of her house. Muniz was told that any car added to the policy had to be registered in Muniz's name.
Muniz also asked NJR's representative about "add[ing] on another driver." Muniz said that Severino would be driving the Chrysler. The representative said that Severino had to have the same address as Muniz. The representative also said that Severino's motor vehicle record could "affect" her policy if he had "points."
Muniz asked whether it would be "better" if Severino obtained a policy under his name. The representative replied that Severino did not have to have his own policy but he would have to be "listed" under Muniz's policy until he obtained his own insurance. The representative told Muniz that the additional car could not be covered until NJR received proof that the vehicle was registered.
It appears that Muniz elected not to insure the 1994 Chrysler. The policy was renewed for the 2003 Honda and the 1980 Toyota. Muniz was the only "named insured" on the declarations page. The two vehicles were listed on the declarations page and on the declarations supplement under the statement, "[t]he rates applicable to this policy are based on the Rating Tier(s) indicated below."
The declarations supplement also stated that the Honda was insured under the "Safe Driver Tier" and the 1980 Toyota listed under the "Standard Tier." Severino's name appears under the Toyota. Next to his name is a statement indicating that in August 2001 he failed to observe a traffic signal.
Muniz testified that the NJR representative did not inform her that Severino would be entitled to the same coverage that she had under the policy. Muniz stated, however, that it was her expectation that Severino would receive the same benefits that she was receiving under the policy. She asserted that the NJR representative did not inform her of the difference between the status of a "driver" and a "named insured."
Based on these facts, plaintiffs in the Severino matter contend that Severino was entitled to coverage as a "named insured" under the Muniz policy, rather than simply as an "occupant" of the vehicle. They assert that Muniz reasonably expected that Severino would be covered as a "named insured." The trial court found, however, that Severino was not entitled to such coverage under the policy. In our judgment, the trial court's determination was correct.
When interpreting the language of an insurance policy, "courts should give the policy's words `their plain, ordinary meaning.'" Nav-Its, Inc. v. Selective Ins. Co. of Am., 183 N.J. 110, 118, 869 A.2d 929 (2005) (quoting President v. Jenkins, 180 N.J. 550, 562, 853 A.2d 247 (2004)). "If the policy language is clear, the policy should be interpreted as written." Ibid. (citing Jenkins, supra, 180 N.J. at 562, 853 A.2d 247). "[C]ourts `should not write for the insured a better policy of insurance than the one purchased.'" Gibson v. Callaghan, 158 N.J. 662, 670, 730 A.2d 1278 (1999) (quoting Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537, 582 A.2d 1257 (1990)).
*1058 Here, the relevant provisions of the policy are clear and unambiguous. Muniz's policy provides that NJR would pay PIP benefits to an "insured" who sustains bodily injury. The policy defines "insured" for PIP coverage as follows:
a. The named insured or any family member who sustains bodily injury:
(1) Occupying or using an auto; or
(2) A pedestrian, when caused by:
(a) An auto; or
(b) An object propelled by or from an auto.
b. Any other person who sustains bodily injury while:
(1) Occupying or using your covered auto with the permission of the named insured; or
(2) A pedestrian, when caused by:
(a) Your covered auto; or
(b) Being struck by an object propelled by or from your covered auto.
The policy thus provides broader coverage for the named insured and family members than other persons. For example, named insureds and their family members are entitled to coverage for bodily injuries sustained while occupying or using any automobile; whereas, other persons are entitled to coverage when occupying or using the covered automobile. In addition, the named insured and family members are entitled to coverage for bodily injuries sustained as pedestrians when the bodily injuries are caused by any automobile; whereas other persons are only entitled to coverage for bodily injuries sustained as a pedestrian when their injuries are caused by the covered automobile.
Moreover, Muniz is identified on the declarations page as a "named insured" and Severino is not. There is nothing in the policy which indicates that Severino is a "named insured." Although Muniz says she thought otherwise, the letter from NJR confirming the changes to the policy clearly indicates that Severino was only mentioned in the policy because he was a driver of the Toyota.
Plaintiffs in the Severino case argue, however, that the declarations page gave Muniz a reasonable expectation that Severino was a "named insured" under the policy. In support of this argument, they rely upon Lehrhoff v. Aetna Casualty and Surety Co., 271 N.J.Super. 340, 638 A.2d 889 (App.Div.1994). In that case, the plaintiff sought UM coverage for his son, who had been injured as a pedestrian in a traffic accident with an unidentified motorist. Id. at 342, 638 A.2d 889.
The plaintiff's auto insurance policy covered the plaintiff and his family members. Id. at 344, 638 A.2d 889. The declarations page identified the plaintiff as the "insured" and listed four members of the family as drivers. Ibid. Another section of the policy indicated that the term "family member" only included persons who were related to the insured "`by blood, marriage or adoption'" and were residents of the insured's household. Id. at 345, 638 A.2d 889.
The insurer denied coverage because, at the time of the accident, the plaintiff's son was no longer residing in the plaintiff's household. Ibid. We held that the plaintiff was entitled to coverage under the policy. Id. at 351, 638 A.2d 889. We observed that
it is the declaration page, the one page of the policy tailored to the particular insured and not merely boilerplate, which must be deemed to define coverage and the insured's expectation of coverage. And we are also convinced that reasonable expectations of coverage raised by the declaration page cannot be contradicted by the policy's boilerplate *1059 unless the declaration page itself clearly so warns the insured.
[Id. at 347, 638 A.2d 889.]
The Supreme Court addressed a similar coverage issue in Zacarias v. Allstate Insurance Co., 168 N.J. 590, 775 A.2d 1262 (2001). That case involved a boatowner's insurance policy which identified the plaintiff and his relatives as "insured persons." Id. at 593, 775 A.2d 1262. The policy expressly excluded coverage for bodily injury to any person insured under the policy. Ibid. The plaintiff's wife had been injured while riding in the plaintiff's boat and the plaintiff sought indemnification under the policy for the claims asserted against him by his wife. Id. at 594, 775 A.2d 1262. The plaintiff argued, among other things, that the coverage exclusion did not apply because it was not mentioned on the declarations page. Id. at 602, 775 A.2d 1262. The Court held, however, that the exclusion applied because it was clear and unambiguous. Id. at 601, 775 A.2d 1262.
In its decision, the Court commented upon our decision in Lehrhoff:
We share the sentiments expressed by the Appellate Division in Lehrhoff in respect of the importance of the declarations sheet. We do not, however, interpret Lehrhoff to require an insurer to include an intra-family exclusion on the policy's declarations sheet in all cases. After an extensive analysis of the declarations sheet, as compared to the limits of coverage contained elsewhere in the policy, the Lehrhoff court found that the general definition section would "unfairly defeat the insured's reasonable expectations" of coverage. [Lehrhoff, supra, 271 N.J.Super. at 350, 638 A.2d 889]. In this case, in contrast, we find no ambiguity, inconsistency, or contradiction between the declarations sheet and the body of plaintiff's policy. As noted, the declarations sheet alerts the insured that the coverages and limits of liability are subject to the provisions of the policy, one of which is the intra-family exclusion. Also, as noted, the exclusion itself is written in direct and ordinary terms.
[Zacarias, supra, 168 N.J. at 602-03, 775 A.2d 1262.]
Here, as in Zacarias, there is no "ambiguity, inconsistency, or contradiction" between the declarations sheet and the policy. The only "named insured" identified on the declarations page is Muniz. Severino's name appears on the declarations page but he is only mentioned to explain the rates applicable to the vehicles covered under the policy. Thus, there is nothing on the declarations page that would give Muniz a reasonable expectation that Severino was entitled to the same coverage that she had as a "named insured."
Moreover, Muniz's conversation with the NJR representative did not give rise to a reasonable expectation that Severino would be covered under the policy as a "named insured." The representative never told Muniz that Severino would be a "named insured" under the policy; rather, the representative made clear that Severino had to be "added" because he was a regular driver of the car. Muniz had not previously disclosed that fact, but NJR became aware that Severino had been driving the car. NJR's representative did not explain the difference between the coverage provided to a "named insured" and an "occupant" of the covered vehicle but the difference in coverage was spelled out in the plain language of the policy.
Reversed on the appeal and affirmed on the cross-appeal.
NOTES
[1] Plaintiffs in the Severino action are the administratrix of Severino's estate and his family members. Plaintiffs in the Rodriguez action are the administratrix of Rodriguez's estate and his family members.