# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JOSHUA IRONS,                          )
                                       )
                    Plaintiff,         )
                                       )
        v.                             )        C.A. No. N20C-03-128 SKR
                                       )
CSAA GENERAL INSURANCE                 )
COMPANY,                               )
                                       )
                    Defendant.         )

## MEMORANDUM OPINION

Keith E. Donovan, Esquire, MORRIS JAMES LLP, Dover, Delaware, *Attorney for Plaintiff Jeremy Irons*.

Douglass Lee Mowrey, Esquire, Wilmington, Delaware, *Attorney for Defendant CSAA General Insurance Company*.

**RENNIE, J.**

## INTRODUCTION

Plaintiff Joshua Irons ("Plaintiff") and Defendant CSAA General Insurance Company ("Defendant") filed competing memoranda on the issue of whether medical expenses incurred by Plaintiff are covered by an automobile insurance policy from Defendant. Plaintiff's leg was injured while he was opening the rear tailgate of his father's girlfriend's vehicle, which was insured under a policy from Defendant. This is the decision after oral argument.

## FACTUAL AND PROCEDURAL HISTORY[1]

On March 21, 2018, Plaintiff was riding in the back of a black 2011 Jeep Wrangler (the "Vehicle") driven by his father. The Vehicle belonged to Plaintiff's father's girlfriend,[2] who gave Plaintiff's father permission to use it for the day.

In preparation for the passengers to go snow sledding, Plaintiff's father parked the Vehicle next to a sledding hill. The parking spot was on a private lane that sloped downward, in front of a yellow Jeep Wrangler with a snowplow blade attached to the front. Plaintiff exited the Vehicle and walked to the rear door to pull plastic snow sleds out of the back. As Plaintiff opened the tailgate, the Wrangler that had been parked behind the Vehicle moved forward down the hill. The Wrangler's snowplow blade struck and pinned Plaintiff between the two vehicles, fracturing his femur.

---

[1] The facts are drawn from the parties' Stipulation of Facts and attached exhibits.
[2] Plaintiff's father and Plaintiff's father's girlfriend have since married.

Plaintiff underwent surgery to repair his femur. Thereafter, Plaintiff submitted a Personal Injury Protection ("PIP") claim for no-fault PIP benefits under the insurance policy from Defendant that covered the Vehicle (the "Policy").

At the time of the accident, Plaintiff and his father were Delaware residents, and Plaintiff's father's girlfriend was a New Jersey resident. The Vehicle was registered in New Jersey, and the Policy was from New Jersey. The Policy named three insureds: Samantha Stunder-Minniti, who was at the time Plaintiff's father's girlfriend, and her parents, William Stunder and Germaine Stunder.

On July 3, 2018, Defendant denied Plaintiff's PIP claim, stating that the Policy does not cover the loss. According to Defendant, Plaintiff is ineligible for PIP benefits under the Policy because he was injured as a pedestrian in Delaware.[3]

On March 13, 2020, Plaintiff filed the complaint in this case. On November 10, 2020, Defendant filed an answer to the complaint. The parties proceeded through discovery and alternative dispute resolution. On April 18, 2022, approximately one month before trial was scheduled to begin, the parties informed the Court that they had distilled the dispute to a pure issue of law and requested that the Court decide the case based on a stipulated set of facts and competing memoranda. On April 19, 2022, the Court agreed to decide the issue on the papers.

On June 16, 2023, the parties filed a stipulation of facts. On June 30, 2023,

---

[3] Stip. Facts Ex. C.

3

Defendant filed a memorandum of law in support of denial of no-fault coverage. On July 14, 2023, Plaintiff filed a memorandum of law in support of granting no-fault coverage. On August 4, 2023, Defendant filed a memorandum in further support of denial of no-fault coverage.[4]

On January 25, 2024, the Court heard argument on the PIP coverage issue.

## LEGAL ANALYSIS

The Policy at issue in this case provides for PIP coverage for an "insured" who sustains "bodily injury."[5] Under the Policy, an "insured" includes "[a]ny other person who sustains 'bodily injury' while 'occupying' or using 'your covered auto' with the 'permission' of the 'named insured.'" And "bodily injury" includes "an accident arising out of the ownership, maintenance or use, including the loading or unloading, of an 'auto' as an automobile."[6]

The dispute between the parties centers on the following provision from the Policy (the "Exclusion"), which limits the scope of that grant of coverage:

> We do not provide Principal Personal Injury Protection Coverage for "bodily injury" to any "insured" who is not "occupying" "your covered auto" if the accident occurs outside of New Jersey. However, this Exclusion (B.1.) does not apply to: the "named insured"; any "family member"; or any resident of New Jersey.[7]

---

[4] On August 15, 2023, Defendant amended this memorandum to correct a party name.
[5] Stip. Facts Ex. B.
[6] *Id.*
[7] *Id.*

Defendant argues that the accident is excluded under this provision because Plaintiff is not the "named insured," a "family member," or a New Jersey resident. Defendant asserts that Plaintiff was "using" but not "occupying" the Vehicle at the time of the accident.[8]  In contrast, Plaintiff argues that the accident is not excluded under the provision because Plaintiff was "occupying" the Vehicle.[9]

In the accident, Plaintiff was injured by the rear Wrangler's snowplow blade while he was opening the rear door of the Vehicle to retrieve snow sleds from within. The accident happened in Delaware, when Plaintiff was not a "named insured," "family member," or resident of New Jersey.  Accordingly, the validity of Plaintiff's PIP claim turns on whether he was "occupying" or "using" the Vehicle for purposes of the Policy at the time of the accident.  The parties agree that New Jersey law governs this dispute.[10]

---

[8] Mem. Def. CSAA Supp. Denial of No-Fault Coverage [hereinafter "Def.'s Mem."]; Rebuttal Mem. Def. CSAA Supp. Denial No-Fault Coverage [hereinafter "Def.'s Rebuttal Mem."].

[9] Mem. Pl., Joshua Irons, Opp'n Def.'s Denial No-Fault Coverage [hereinafter "Pl.'s Mem."].

[10] Both parties support their arguments with New Jersey case law and statutes.  Defendant argues that New Jersey law applies under the *lex loci contractus* doctrine.  This doctrine states that "in an action involving the interpretation of an automobile liability insurance contract, the law of the place of the contract will govern the determination of the rights and liabilities of the parties under the insurance policy." *State Farm Mut. Auto. Ins. Co. v. Simmons' Estate*, 517 A.2d 488, 493 (N.J. 1980).  Today, New Jersey courts reject this doctrine in favor of the Restatement's "most significant relationship" test for choice of law, but there is no need to interrogate this issue further here.  New Jersey governs in this case under either test. *See Pittston Co. v. Allianz Ins. Co.*, 795 F. Supp. 678, 683 (D. N.J. 1992) ("Subsequent New Jersey Appellate Division decisions have made clear that the *Restatement* 'most significant relationship' test is the law of New Jersey."); *Continental Ins. Co. v. Honeywell Int'l, Inc.*, 188 A.3d 297, 314 (N.J. 2018) ("Our Court rejected the former choice-of-law rules of *lex loci contractus* (for insurance contracts) . . . .").

## A. Validity of the Exclusion

Plaintiff argues that the Exclusion contravenes New Jersey law because it attempts to restrict the mandatory no-fault PIP coverage required by New Jersey state statute, *N.J. Stat.* § 39:6A (the "Statute").[11] Defendant argues that the Statute does not bar the Exclusion. Rather, Defendant asserts that the Exclusion is consistent with the Statute's two-tiered system for PIP benefits, under which the members of an insured's family who reside with him are afforded broader protection than other persons.[12]

In New Jersey, to determine the interpretation of a statute, "the basic rule is that the statutory language should be given its ordinary meaning absent specific intent to the contrary."[13] The Statute provides that it should be "liberally construed as to effect the purpose thereof."[14] The provisions of an automobile insurance policy "must be interpreted with statutory policy and intent in mind."[15]

Pursuant to the Statute, a New Jersey automobile liability insurance policy must extend PIP benefits:

> to the named insured and members of his family residing in his household who sustain bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile, or as a pedestrian, caused by an automobile or by an object propelled by or from an automobile, and to other persons sustaining bodily injury while

---

[11] Pl.'s Mem.

[12] Def.'s Mem.; Def.'s Rebuttal Mem.

[13] *New Jersey Mfrs. Ins. Co. v. Griffin*, 601 A.2d 261, 263 (N.J. Super. 1991).

[14] *N.J. Stat.* § 36:6A-16.

[15] *Lemos v. Sousa*, 682 A.2d 277, 281 (N.J. Super. 1996).

6

occupying, entering into, alighting from or using the automobile of the named insured, with the permission of the named insured.[16]

In this case, the Exclusion appears to be in tension with the liberal construction of the Statute that New Jersey law requires.[17]  The Statute demands that New Jersey automobile liability insurance policies extend PIP benefits to persons other than the named insured and his family members who sustain bodily injuries while "entering into, alighting from, or using the automobile of the named insured, with the permission of the named insured."[18]  But the Exclusion provides for denial of PIP coverage for certain of those persons when the accident occurs outside of New Jersey.[19]  For instance, if Plaintiff were found to have been injured while "using"—but not "occupying"—the Vehicle in Delaware with permission from the named insured, the Statute would seem to demand that Plaintiff be extended PIP benefits, but the Exclusion would deny him those benefits from the Policy.  Nonetheless, the Court does not rest its decision on this statutory issue.

### B.  "Occupying" or "Using" the Vehicle

The Exclusion provides for denial of PIP coverage for certain persons who

---

[16] *N.J. Stat.* § 39:6A-4.

[17] "Any attempt by an insurance company to dilute or diminish statutory provisions applicable to its contract of insurance is contrary to public policy." *Selected Risks Ins. Co. v. Allstate Ins. Co.*, 432 A.2d 544, 547 (N.J. Super. App. Div. 1981).

[18] *N.J. Stat.* § 39:6A-4.

[19] Stip. Facts Ex. B.

were not "occupying" the covered vehicle when they were injured.[20] Defendant argues that Plaintiff was "using" but not "occupying" the Vehicle when he was injured.[21] In turn, Plaintiff argues that he was "occupying" the Vehicle at the time of the accident, that he was "upon" and "getting in" the Vehicle.[22]

To determine whether a person was injured while "occupying" or "using" a covered vehicle for purposes of PIP coverage, New Jersey courts apply the "substantial nexus test." The plaintiff must establish a "substantial nexus" between the covered vehicle and the accident.[23]

New Jersey courts have held that:

> [T]he legislative intent behind PIP benefits is to ensure the broadest coverage possible so long as an automobile was involved in that which happened, and that the no-fault law is social legislation designed to give the broadest protection to automobile accident victims, including prompt payment of claims, consistent with the language of the statute's pertinent provisions.[24]

The language of the Statute is construed liberally, and courts interpret New Jersey automobile insurance policies with this liberal statutory construction in

---

[20] To reiterate, these are persons other than the named insured, his or her family members, and New Jersey residents. *Id.*

[21] Def.'s Mem.; Def.'s Rebuttal Mem.

[22] Pl.'s Mem. Plaintiff agrees that he was "using" the Vehicle at the time because he was unloading it to retrieve the sleds. But he also maintains that he was "occupying" it. *Id.*

[23] *Severino v. Malachi*, 975 A.2d 1049, 1056 (N.J. Super. App. Div. 2009).

[24] *Salamone v. Regency Palace*, 766 A.2d 1231, 1233 (N.J. Super. 2000) (citations omitted); *Darel v. Penn. Mfrs. Ass'n Ins. Co.*, 555 A.2d 570, 574 (N.J. 1989) (describing PIP coverage as a "social necessity" requiring "the broadest application consistent with the statutory language").

mind.[25]

Further, New Jersey courts distinguish the terms "occupying" and "using" an insured vehicle from one another. Whether a person was "occupying" a vehicle is determined on case-by-case basis. New Jersey courts have defined "occupying" as "in or upon or entering into or alighting from" the insured vehicle.[26] A "[m]ere coincidental connection between the accident and some touching of the car would not be enough," but the person need not have been using the car for transportation at the time to establish occupancy.[27] Meanwhile, New Jersey courts have held that a non-occupant who has just exited the insured vehicle is "using" the vehicle "while examining the damage sustained in an accident or while pushing the vehicle from the roadway to the shoulder," both of which constitute "normal use of an automobile which has been involved in an accident or broken down."[28]

To illustrate, in *Mondelli v. State Farm Mutual Automobile Insurance Co.*,[29] the plaintiff was standing in the street, resting his arm on the roof of the insured

---

[25] *See supra* note 14 and accompanying text. "By its plain terms, N.J.S.A. 39:6A-4 was designed to provide PIP benefits in a broad range of circumstances not limited to injuries arising from merely operating a vehicle." *Memudu v. Gonzalez*, 290 A.3d 636, 642 (N.J. Super. App. Div. 2023).

[26] *Mondelli v. State Farm Mut. Auto. Ins. Co.*, 506 A.2d 728, 730 (N.J. 1986). The New Jersey Superior Court, Appellate Division has noted that persons found to have been "occupying" an insured vehicle often "were actively engaged with their vehicles at the time of their respective injury." *Y.E.-M. ex rel. C.G. v. Cheheli*, 2021 WL 5895811, at *3 (N.J. Super. App. Div. Dec. 14, 2021).

[27] *Mondelli*, 506 A.2d at 731. The New Jersey Supreme Court was unpersuaded by the notion that the word "upon" requires immediate use of the vehicle and found that "leaning on" the vehicle is sufficient to establish occupancy. *Id.* at 730-31.

[28] *Ohio Cas. Grp. Ins. Cos. v. Gray*, 732 A.2d 1145, 1146-47 (N.J. Super. App. Div. 1999).

[29] 506 A.2d 728 (N.J. 1986).

vehicle, when another vehicle struck him and drove away. The court found that the plaintiff was "occupying" the vehicle at the time of the accident because he was "upon" it.[30]

In *Ohio Casualty Group of Insurance Cos. v. Gray*,[31] while the defendant was outside of his car, examining the exterior, loose shopping carts struck him and injured him. The court found that he was "using" the vehicle but not "occupying" it. Nonetheless, this meant that the defendant was entitled to PIP benefits under the Statute.[32]

In *Severino v. Malachi*,[33] two co-plaintiffs had exited their car for less than a minute when another vehicle drove into them.[34] The court found that they were not entitled to PIP benefits because they were in "mere proximity" to the covered vehicle, not "occupying, entering into, alighting from or using" it for purposes of the Statute.[35] The court emphasized that the co-plaintiffs "had already exited the vehicle and closed the doors" and were not "leaning upon or touching" their vehicle when they were struck.[36]

In this case, the Policy defines "occupying" an insured vehicle as "in; upon;

---

[30] *Id.* at 730-32.
[31] 732 A.2d 1145 (N.J. Super. App. Div. 1999).
[32] *Id.* at 1146-47.
[33] 975 A.2d 1049 (N.J. Super. App. Div. 2009).
[34] *Id.* at 1051-52, 1056. At the time of the incident, the co-plaintiffs were either standing adjacent to the covered vehicle or while crossing the street. *Id.*
[35] *Id.* at 1056-57.
[36] *Id.* at 1055.

10

or getting in, on, out or off."[37]  Considering the liberal construction of the Statute and the Policy, as New Jersey law requires, Plaintiff was "occupying" the Vehicle when he was injured.  He had exited the Vehicle, crossed to the rear door, and begun to open the tailgate to retrieve snow sleds from the storage area.  Hence, he was "upon" and "getting in" the Vehicle, not merely in proximity, examining, or intending to enter the Vehicle.  This constitutes "occupying" the Vehicle for purposes of the Policy, the Exclusion, and the Statute.

The facts in this case are distinguished from those in the cases in which the injured person was found not to have been "occupying" the insured vehicle.  Plaintiff was opening the rear tailgate of the Vehicle in the process of retrieving items from within, not merely inspecting the Vehicle, walking towards it, standing adjacent to it, or crossing the street nearby.  Plaintiff has established a "substantial nexus" between the Vehicle and the fracturing of his femur.

Plaintiff was also "using" the Vehicle at the time of the accident.  While opening the rear tailgate after having exited the Vehicle, he was engaged in "normal use" of the Vehicle, which was no longer in motion.  Accordingly, Plaintiff was both "occupying" and "using" the Vehicle at the time of the accident for purposes of the Policy, the Exclusion, and the Statute.[38]  Hence, the accident is covered by the Policy

---

[37] Stip. Facts Ex. B.  The Policy does not specifically define "using."

[38] Arguably, Plaintiff was also "entering into" the Vehicle at the time of the accident for purposes of the Statute because he was entering the Vehicle's rear storage area to retrieve the snow sleds.

11

and the Statute.  The Exclusion does not justify denial of PIP coverage for the injuries that Plaintiff sustained due to the accident.

## CONCLUSION

Based on the stipulated set of facts and the parties' competing memoranda, for the foregoing reasons, the Court finds that the Policy covers the accident in this case.  Plaintiff was "occupying" the Vehicle when he was injured, so the Exclusion in the Policy does not warrant denial of PIP coverage from Plaintiff.

**IT IS SO ORDERED,** this 12th day of April, 2024.

_____
Sheldon K. Rennie, Judge

---

The parties do not address this possibility.  In *Salamone v. Regency Palace*, 766 A.2d 1231 (N.J. Super. 2000), the plaintiff fell and was injured while reaching for the passenger side door of her insured car to place an item within.  A parking valet had brought the car to the curb.  The court found that the plaintiff was "entering into" the car for purposes of the Statute because she had made vicarious physical contact with the car through the valet. *Id.* at 1234.  In contrast, in *Aversano v. Atlantic Employers Insurance Co.*, 676 A.2d 556 (N.J. Super. App. Div. 1996), the plaintiff was injured while walking across the parking lot towards his car with his key in hand, reaching for the door lock.  The court found that he was not "entering into" the vehicle but was "merely approaching" the car.  Accordingly, the court held that the plaintiff was not entitled to PIP benefits because his "mere proximity" and "intent to enter" the vehicle were insufficient to satisfy the standard. *Id.* at 572, 575.  Here, Plaintiff's level of contact with the Vehicle at the time of the accident more closely resembles the circumstances in *Salamone* than those in *Aversano*.  Nonetheless, whether Plaintiff was "entering into" the Vehicle is not dispositive for the Court's decision in this case.

12